Parker, C. J.
The petitioner, as executor of the last will and testament of Jeremiah Allen, Esq., deceased, prays for a license to sell so much of the real estate of his said testator as will raise the sum certified, by the judge of probate, to be due from the estate of the deceased, over and above the personal estate which came into the petitioner’s hands as executor, and an additional sum, to form a capital, from the interest of which he may pay certain annuities, created by tii said last will and testament.
*61 The petitioner is sole executor, and one of three residuary legatees and devisees of the testator’s whole estate, after payment of the debts, and the legacies and annuities given by the will.
By the certificate of the judge of probate, it appears that the object of the sale, so far as respects the debts and most of the legacies, is to reimburse the executor; he having paid the same, according to the directions of the will, soon after the probate of the same; excepting one, which was paid in the year 1811, six years before this petition was filed.
The will was proved and allowed in February, ] 809; and the only account rendered by the executor of his administration was presented in the year 1816.
Theodore Strong, whose wife Martha was one of the residuary devisees, and William Allen, brother of the petitioner and the other residuary devisee, object to the prayer * of this petition, because, in May, 1809, they severally released their right in the estate, both real and personal, to the petitioner, he undertaking to pay the debts, legacies, and annuities.
The said Strong shows that, in consideration of the release on the part of him and his wife, the petitioner became obligated to pay them the sum of 20,000 dollars, in six years from the date of the bond, with interest at the rate of four per cent, per annum, until the principal should become due ; and that, as collateral security therefor, the petitioner mortgaged to him a part of the estate of the said Jeremiah, which had been so released. He objects to the granting of the petition, because his security would thereby be diminished, if not destroyed.
The said William Allen shows that the petitioner had conveyed to him, in pursuance of the contract between them, other parts of the real estate of the said Jeremiah, which he alleges ought not now to be taken from him to pay the debts of the testator, which the petitioner had undertaken to pay, in consideration of the release made by him as aforesaid.
The petitioner answers these objections, by questioning the authority of the Court to refuse a license to sell, when it has been made to appear, by a certificate of the judge of probate, that the personal estate is insufficient to pay the debts due from the testator at the time of his death, and the legacies given by his will; — and also by stating, and offering to prove, that the considerations, for which he made the several bargains with the said Theodore and William, were so grossly inadequate as to entitle him to have them set aside, or disregarded by the Court, as objections to the prayer of his petition. And, as proof of this inadequacy, he represents that the bargain was made with reference to an appraisement of the real *62 estate cf the deceased, made in the year 1809, in which he sup poses ti*¿ value of the estate was much overrated; in proof of which he refers us to an appraisement recently made at his instance, and also to testimony of witnesses upon the stand.
* With respect to the first question, no doubt has heretofore arisen of the discretionary authority of the Court to refuse a license to sell, notwithstanding a certificate of the judge of probate, that there exists a deficiency of personal assets. The words of the statute (1) imply such discretion. The courts are authorized to grant license when it shall appear, &c., not required; and indeed the provision for an application to the courts would seem to be wholly unnecessary, if their duty was merely ministerial, to carry into effect the decree of the Probate Court.
In the case of Scott vs. Hancock & Al. (2) there was a similar certificate, and yet a license was refused. In that case, although the claims of the petitioner were very urgent, and supported by eminent counsel, no question was raised with respect to the discretionary power of the Court.
Cases often occur which render the exercise of this discretion essential to the rights and claims of persons interested in the real estate of a deceased testator or intestate. Those who have purchased, for a valuable consideration, of an executor having power to convey, or of an heir or devisee, and the heirs and devisees themselves, ought not to be disturbed at the will of an executor or administrator, after the time has elapsed when, by law, such executor or administrator has the right to prevent any creditor from recovering judgment against the estate. And yet, if the Court has ho power to refuse a license to sell, the executor may, at any time, by collusion with the creditor, or by negligence, permit a judgment to be re covered, the effect of which will be to defeat vested rights. And even without judgment, upon the doctrine contended for, the executor may, at any distance of time, represent to the judge of probate the existence of debts, and procure a certificate of the insufficiency of personal assets, and upon that obtain of course a license to sell; the effect of which would be to defeat the beneficial ends of the statute of limitations — the object of which was, as we have repeatedly stated, not merely the convenience or security of executors and administrators, but the * permanent security and quiet of those who hold the estate by an apparently legal title, (a)
It is true that the lands and tenements of deceased persons are *63 charged by law with their debts; but the lien so created is not perpetual. On the contrary, we think it. does not continue beyond the time when creditors are permitted by law to enforce their demands against the estate by a suit against the executor or administrator ; which is four years from the time when public notice shall have been given of the trusts undertaken. A suit commenced within the four years, although near the expiration thereof, would undoubtedly save the lien; because to such a suit the statute could not be pleaded. But when a suit is commenced afterwards, when judgment could not be obtained but through the collusion or negligence of the executor or administrator, we think a levy upon the land then in the possession of the heirs, devisees, or purchasers, could not lawfully be made; but the remedy must be against the executor or administrator, as in the case of an executor de son tort.
This is a reasonable limitation of the lien upon the estate of a deceased debtor, and such as was undoubtedly intended by the legislature ; for, otherwise, "the real estate of a deceased debtor could never be safely transferred; and the holders of it, by purchase or otherwise, could never feel that security which is intended by the laws to be given. The words of the statute are such as, by a natural construction, bring us to this conclusion: “ All claims of creditors to the estate of any person deceased, upon which an executor or administrator has already undertaken the administration, shall be exhibited and demanded-within three years from the passing of this act, or within three years after such claim may accrue, and not afterwards.” This was intended as a perpetual bar to all debts which should not be exhibited within the time prescribed. “ And no executor or administrator, who shall hereafter undertake the trust, shall be compelled or held to answer to the suit of any creditor, &c., unless the same * suit shall have been originally commenced within the term of three years next after his giving bond,” &c. (3) This provision was intended to place the claims, which might afterwards arise against the estates of persons not then deceased, on the same footing with those before provided for; that is, to allow three years, and no more,' from the time when notice should be given of the trust, for the creditors to prosecute their claims. The subsequent statute, which enlarges the time to four years, is a confirmation of this construction. (4)
Upon these principles it is clear that, if the deuts of the testator in this case had not been paid by the executor, the creditors could have maintained no action against him at this time, the effect of which would be to bind the real estate. If a judgment had been *64 obtained, by the culpable or negligent omission of the executor to plead the statute of limitations, he might be answerable out of his own estate ; but the execution could not be levied on the estate of the deceased, in prejudice of heirs, devisees, or purchasers. It would seem to follow, of necessity, that for such debts not sued, the executor ought not to have leave to sell the real estate; for the object in granting such permission would be to prevent suits, by enabling him to pay such debts as would otherwise be legally recoverable against him in his capacity of executor; and to give the executor a right to sell the real estate for such purposes, would be to give him the election to pay debts barred by the statute, which ought not to be.
We think that the executor, in the present application, stands in no better light than he would if the debts had not been paid by him, and he was now claiming to sell the real estate, in order to pay these debts to the several creditors themselves. The avowed object of the petition is to reimburse himself for the amount of debts paid. But when is his application made? — More than six years after the last debt paid by him, and upon an account rendered by him eight years after he undertook the trust.
If it be true that an executor, paying debts beyond the personal estate, stands in the condition of the creditor, there *is no pretence for the present claim. For the creditor himself could not have the remedy sought for, nor any other legal mode of satisfying his debt out of the lands of the testator. Indeed, there is much more reason that an executor or administrator, who has lain by, after paying the debts, until those who have an interest in the lands shall believe themselves to have an indefeasible title, should be prevented from disturbing them with a dormant claim, known perhaps only to himself, than that a credit- or, who may not know the circumstances of the estate, should be debarred from a similar privilege.
If there be any exception to this doctrine, it is when the estate shall have remained, at the time of the application, as it was at the death of the testator, without any partition among the heirs or devisees, and without any conveyance from them or from the executor. But even in such a case, an executor or administrator, claiming license to sell to reimburse himself, would be held to make his application within a reasonable time after the debts should have been paid by him.
It has been said, in argument, that the respondents are estopped from denying the debts as due from the executor, or from objecting the statute of limitations, because they were cited to appear before the judge of probate, when he offered his account for allowance, *65 and did not appeal from the decree of the judge allowing the account.
But admitting that they cannot now contest the fact that the debts are so due, they have a right to defend against the consequence attempted to be inferred, viz., a right to sell real estate, of which they now have the lawful title under the petitioner himself. Of the fact that debts are due, perhaps the decree without appeal is conclusive evidence ; but of the legal effect of that fact upon the estate, the court is the proper judge, under the discretionary authority vested in it by the statute. For, according 10 the principles before stated, there may be no right to sell, notwithstanding the debts remain unpaid — this remedy being * subject to be lost by the omission of the creditors, or of the executor, to seek it within the time by law prescribed.
I have said that, perhaps, if the estate of the testator had remained in the condition it was in at his death, without any partition among the devisees, or any conveyances, an executor who had advanced his own money to pay the debts of the testator might have this remedy to reimburse himself, there being a deficiency of personal es ate. This may make it proper to inquire what is the present condition of the estate in question ; and whether it can, by any possibility, be considered by the executor as the estate of the tes tator at ihe present time.
In May, 1809, the executor became sole seised of the whole real estate, by legal conveyances from the other residuary devisees. He had the uncontrollable right to dispose of it, subject only to the lien of the creditors for four years from the time he gave public notice that he had assumed the trust of executor. He did, in fact, dispose of it, by legal conveyances, to persons now holding under his deeds. Why should he ask for leave to sell what he has already actually sold ? The effect would be, to undermine and defeat the conveyances which he has already made, and to change the security of the purchasers from real estate to personal covenants against himself— thus enabling him to avail himself of the price of the estate sold, and leave his grantees to an uncertain remedy against himself, running all the risks of his present or future insolvency. We think so unjust a consequence cannot follow from any rules or provisions of law. Indeed, the petitioner himself is aware of this consequence, and therefore puts his claim, in this view of it, upon the suggestion that his conveyances to his co-devisees ought to be avoided as unconscionable, from the inadequacy of the consideration, or because there was a gross mistake of all the parties with respect to the condition and value of the estate.
The suggestion is founded upon a supposed over-valuing *66 ot the real estate of the testator, by those who were * appointed by the judge of probate to appraise it, soon after the will was proved.
It is unfavorable to this suggestion that the executor should have delayed acting upon it until nearly ten years had expired after he came into possession of the whole estate, by a bargain with his codevisees ; and there is reason to suppose that any apparent extravagance in the valuation is more owing to a real difference in the value, between the time when the appraisement was made and the present time, than to any error in the estimation. Besides, the executor had full knowledge of the estate, and was not bound to take the opinion of the appraisers as the basis of any bargain he might incline to make. There is no doubt he calculated upon a safe, if not a profitable bargain ; and if he misjudged, without any attempt to mislead him by those with whom he treated, he cannot thereby avoid the legal effects of his contracts. We have seen nothing which bears a semblance of fraud, oppression, or cunning, made use of by the co-devisees, to bring him unwillingly into a disadvantageous bargain. On the contrary, the evidence justifies the opinion that it was a bargain of his own seeking.
Neither is there any thing in the disparity of price, compared with the estimated and probable value of the estate when released by the devisees, which can authorize relief, according to the principles adopted in courts of equity. There may be a difference of from 1000 to 2000 dollars, in favor of Mr. Strong, in his bargain. But this is not such a difference as, in the language of the books, would shock all men of common intelligence at first blush, and be itself a proof of fraud or management on the part of the devisees. The executor might have thought it for his interest to extinguish the rights of his brother and sister in the estate even at a great price, that he might have the whole control of it himself. That he did think so seems probable, from his having surrendered his first, bargain, which secured to Mrs. Strong her part of the estate, or the value of it, after paying all debts, legacies, and * annuities, and giving in lieu thereof a sum certain, taking those encumbrances upon himself. Under all the circumstances of the case, it is impossible for us to come to the opinion that his mortgage and other deeds are void, or ought to be set aside in equity.
It might be questioned whether we have authority so to do, under this form of jurisdiction ; as we have no power to give a trial by jury, on controverted facts, to the party to be prejudiced by avoiding the deeds. At any rate, if we have the power, we see no reason whatever for exercising it, so as to defeat the titles made by the *67 petitioner himself, in the full exercise of his judgment, and without any influence which can authorize him to depart from his own bargains, (a)
The petitioner takes nothing by his petition.
Gorham, and Rand for the petitioner.
Prescott, W. Sullivan, Savage, and Sohier, for the respondents.

 Stat. 1783, c. 32.

 13 Mass. Rep. 162.

 Vide note to Dawes vs. Shed & Al., ante, p. 8.

 Slat. 1788, c. 66, § 3.

 Stat. 1791, c. 28.

 Scott vs. Hancock & Al. 13 Mass. Rep. 162. — Thomson vs. Brown & Al. 16 Mass. Rep. 172.—Emerson vs. Thomson & Al. 16 Mass. Rep. 429. — Brown & Al. vs. Anderson, 13 Mass. Rep. 201.