WILLIAM M. DORMAN *et ux.*, plaintiffs in error, v. JOHN LANE, administrator of Christopher Robinson, deceased, defendant in error.

### *Error to Gallatin.*

After the expiration of one year from the final settlement of the accounts of an intestate in the Court of Probate by the administrator, no application, on the part of such administrator, to sell the real estate of the intestate to satisfy debts still due, will be sustained, except the circumstances of the particular case are of such a peculiar character as to make it the duty of a Court of Equity to depart from this general rule.

Whatever defence an administrator may be allowed to make against the claims or demands of creditors, may be made by any person interested in the realty against an application of an adminintrator to sell such realty for the payment of the debts of the intestate.

On an application of an administrator to sell the real estate of his intestate, the defendants offered to prove that the administrator had received mesne profits from the occupation of such estate more than sufficient to pay the debts due from the estate, but the Court refused to hear the testimony: *Held,* that the Court erred in such refusal.

The rule of law is, that a sale under a void authority is also void, and the purchaser can recover back the purchase money.

PETITION by an administrator to sell the real estate of his intestate for the payment of debts, &c. The defendant in error, at the September term of the Gallatin Circuit Court, 1841, filed his petition in said Court for leave to sell the real estate of the deceased to pay a claim of $1008·87, claimed by him to be due him individually from the estate. The several proceedings thereon in the Court below, as well as the material facts in the case, will appear in the Opinion of the Court. The cause was heard in the Court below at the September term 1842, before the Hon. Walter B. Scates, and a decree entered, ordering the land to be sold to pay the debt in the petition mentioned, with legal interest thereon until paid.

*A. Lincoln,* for the plaintiffs in error.

1. The power of the Circuit Courts to order sales of real estate, upon applications of administrators, &c. for the payment of debts, was, in this case, barred and destroyed by

lapse of time. Ex parte *Allen*, 15 Mass. 58; *Wellman* v. *Lawrence*, Ib. 326; *Stearns* v. *Stearns*, 16 do. 171; Petition of *Richmond*, Adm'r, 2 Pick. 567; *Heath* v. *Wells*, 5 do. 142; *Smith* v. *Dutton*, 16 Maine, (4 Shepley,) 308; *Jackson* v. *Robinson*, 4 Wend. 436, 442; *Mooers* v. *White*, 6 Johns. Ch. R. 360, 376 to end.

2. The sale of the land, under the Act, &c. and receipt of the proceeds by Lane, was a payment of the same debt, now sought to be re-paid by a re-sale of the land. *Marvin* v. *Vedder*, 5 Cowen, 671;

3. Or, if not *payment,* the proceeds of the sale are assets in Lane's hands sufficient for such payment. 2 Kent's Com. 491, and note; *Henderson* v. *Bradford*, 1 Bibb, 509; *Wallis* v. *Wallis*, 4 Mass. 135; *Owings* v. *Hull*, 9 Peters, 607.

4. The Bank dividends, and the value of the mesne profits of the land, together with legal interest thereon, are assets in Lane's hands; and the amount thereof should have been accurately ascertained by the Court below, and deducted from Lane's debt and interest, and a sale ordered to satisfy the balance only, if any such balance should have appeared. R. L. 644, §§ 98, 99; Gale's Stat. 711. *Mooers* v. *White*, 6 Johns. Ch. R. 360, 376 to end.

*L. Trumbull,* for the defendant in error:

This Court will not review any opinion of the Circuit Court, unless objected to on the trial.

No error will be looked at, however flagrant, unless specially assigned.

The bill of exceptions herein does not purport to set out all of the testimony in the cause; every thing, therefore, is to be presumed, necessary to sustain the finding of the Court.

It does not appear by the bill of exceptions, when those exceptions were tendered.

An allowance of an order of sale rests in the discretion of the Court, when a great time has elapsed without making an effort to procure an order of sale. Here, the party did not sleep upon this matter, but made an early but ineffectual effort, to enforce his lien. R. L. 657, § 6; Gale's Stat. 721. No evi-

dence here that the administrator ever did settle the estate of his intestate. *Ricard* v. *Williams*, 5 Peters' Cond. R. 237.

The bill of exceptions does not show that the money, for which the land sold under the Private Act of the Legislature, ever was received by Lane, or applied by him to the payment of this debt.

An action for money had and received lies to recover back money paid under a void authority. 1 Bac. Abr. 261; Chitty on Con. 500; *Newdigate* v. *Davy*, 1 Lord Raym. 742; *Fowler* v. *Shearer*, 7 Mass. 14; *Shearer* v. *Fowler*, Ib. 31; 1 U. S. Dig. 289, No. 486; *Putnam* v. *Westcott*, 19 Johns. 73.

The Probate Court alone, and not the Circuit Court, had power to adjudicate upon the accounts of the intestate, and consequently the defendants could not, on the application of the administrator to sell the lands of his intestate, avail themselves of the benefit of any claim that they may have had against Lane, the administrator and creditor.

The claim of set-off for the use and occupation of the lands of the intestate by Lane could not have been properly allowed. The lands were occupied by Lane, not as administrator, but in his individual capacity.

The Opinion of the Court was delivered by

SHIELDS, J. In this case, John Lane as administrator of Christopher Robinson, deceased, filed his petition in the Circuit Court of Gallatin county, at the September term thereof, in the year 1841, for an order to sell the real estate of the intestate to pay the sum of $1008·87 adjudged to be due from the estate to the said Lane by virtue of an order of the Court of Probate of said county, dated the 30th day of November, 1826. The petition stated that Dorman and wife were the only heirs at law of the intestate. Dorman and wife being notified of this proceeding, appeared in the Court below and filed several pleas, showing cause against the petition. The pleas are very informal, and the better practice would have been to embody the defence in an answer. It is wholly unnecessary to set them out at length, as the bill of exceptions

and the Opinion of the Court will notice the defence so far as it is necessary to a decision of the cause.

The record contains two bills of exceptions. One shows that the plea of *nil debet* in sixteen years, and the plea of *nil debet* in twenty years, were tendered by the defendants below, and rejected by the Court. The other shows that, at the trial before the Court, Dorman and wife proved the receipt by Lane of three hundred dollars in dividends due the estate from the Bank of Illinois, and that this sum had been received by Lane subsequent to the date of the order in the Court of Probate; and also, that Lane in his own right, and not as administrator, had received mesne profits from the occupation of the said land mentioned in the petition more than sufficient to pay the whole debt. It further shows, that Lane, by virtue of an Act of the legislature, sold the same land to pay the same debt in the petition mentioned, and received, as the proceeds of said sale, a sum greater than the amount due him from the estate. The Court below held the Act of the legislature unconstitutional, the sale void, and the receipt of the money under it no discharge of the debt. It also disallowed all of the offsets, and rendered a decree directing the petitioner to sell the land in the petition mentioned, or so much thereof as would be sufficient to pay the said debt or debts of the intestate so allowed by the Court of Probate, with legal interest thereon until paid. From this decree of the Circuit Court, Dorman and wife have appealed to this Court, and we are now called upon to determine whether the decree thus rendered is erroneous.

The first objection to the decree is founded on the length of time which was suffered to intervene between the rendition of the order in the Court of Probate, allowing the debt of Lane, and the filing of the petition in this case. The petition itself shows, that in 1826, an order was made in the Probate Court of Gallatin county, in favor of the petitioner, and against the estate of Christopher Robinson, deceased, for the sum of $1008·87. It also appears, that the petitioner is administrator *de bonis non* of the said intestate, but there is nothing to show when he first received his appointment as

such administrator. In the absence of any averment in rela-
tion to this matter in the petition, we are left to presume that
Lane himself, as administrator, obtained the order already
alluded to, in his own favor in the year 1826, against the es-
tate of his intestate, and that, although no personal property
of the deceased ever came to his hands, possession or know-
ledge, yet he suffered fifteen years to elapse before making
any application for the sale of the real estate for the payment
of his debt. It would be extremely hazardous for this Court
to sanction such gross negligence, and particularly in a case
where the same person was both administrator and creditor.
He permitted the order to lie dormant for the space of fifteen
years, to continue a lien upon the real estate, and after such
an extraordinary lapse of time, he applies to the Circuit
Court, and without offering any excuse for this unreasonable
delay, seems to expect, as a matter of course, that the Court·
will enforce the lien, and direct a sale of the real estate to
satisfy the debt.

In the absence of all legislative enactment, it is extremely
difficult to lay down any positive general rule on this subject,
which will operate safely and equitably in all cases. The
authorities to which we have been referred by counsel prove,
that this difficulty has been felt by all the Courts that have
undertaken to investigate this subject. The Supreme Court
of the United States, in the case of *Ricard* v. *Williams*, 7
Wheat. 60, considered this point, and concluded that an ap-
plication of this kind ought to be limited by analogy to the
limitation of the right of entry in real actions. In *Mooers* v.
*White*, 6 Johns. Ch. R. 380, Chancellor Kent, after review-
ing the various decisions on this point, expressed some dis-
satisfaction with the conclusion to which Justice Story arri-
ved in the case just cited, and barely intimated an opinion
that one year would, in ordinary cases, be a reasonable time.
In the case of Ex parte *Allen*, 15 Mass. 58, it was held that
the executor could not, after the expiration of four years,
(being the period of limitation of suits against the executor
and administrator,) obtain a license to sell, even though debts
should remain unpaid, and that the remedy was lost by the

negligence of the creditor. In *Smith* v. *Dutton*, 16 Maine, (4 Shepley,) 312, the Court adopted, by analogy, the same principle, and decided, that after the expiration of four years, no license ought to be granted to sell real estate to pay the debts of an intestate, unless under peculiar circumstances.

It will be seen from the references already given, that the Courts of Massachusetts and Maine have established the general rule, that after a creditor is barred by the Statute of Limitations from maintaining an action against the administrator, the administrator is, by analogy, likewise barred from obtaining a license to sell the realty. It is provided by law in those States, that no action can be maintained against an administrator after the expiration of four years from his appointment, and notice thereof given. This being the period of limitations of actions against the administrator, their Courts have determined, by analogy, that it shall also be considered a limitation against applications to sell lands for the payment of debts.

The sixth section of *"An Act to amend an Act entitled an Act relative to Wills and Testaments, Executors and Administrators, and the settlement of estates,"* approved February 16, 1831, provides that "no suit shall be brought against any executor or administrator for or on account of any claim or demand against the testator or intestate, unless such suit shall be brought within one year next after such executor or administrator shall have settled his accounts with the Court of Probate." By analogy to the rule established in Maine and Massachusetts, we may lay it down as a general rule in this State, that after the expiration of one year from the final settlement of the accounts of the intestate in the Court of Probate by the administrator, no application on the part of such administrator to sell the real estate of the intestate to satisfy debts still due, will be sustained, except the circumstances of the particular case may be of such a peculiar character as to make it the duty of a Court of Equity to depart from this general rule. Such has been the opinion of the Court in the case of Ex parte *Richmond*, 2 Pick. 569. The language there used is, "that unless extraordinary circum-

stances render it proper, a license will not be granted after four years have expired." In *Heath* v. *Wells*, 5 Pick. 142, the same principle is decided, and four years considered a limitation, unless under the extraordinary circumstances of a particular case. In the case now under consideration, nothing appears in the record to show that a final settlement had ever been made by the administrator; but, on the contrary by his own showing, he stands chargeable with having neglected for the space of fifteen years to execute a trust, which the law required him to execute within a reasonable time; and this delay, this neglect of duty, this gross *laches* on his part remaining wholly unaccounted for, cuts him off from any right to the benefit of this application.

The next objection to the decree is founded on the decision of the Court in relation to the offsets. The heirs proved that Lane had received three hundred dollars of the assets of the estate, which should have been deducted, as they insist, from the amount allowed by the Court of Probate, and a sale directed of only so much of the real estate as would pay the balance. They also offered to prove that Lane, in his own right and not as administrator, had received mesne profits enough from the same land to pay the whole debt, but this proof the Court refused to hear. Although the only inquiry in a proceeding of this kind is, whether any part, and if so, how much of the real estate is to be sold, yet, to determine this question correctly, it is necessary to ascertain the exact amount of the debt actually subsisting at the time. The heirs, devisees, or alienees, when called before the Court, may show that no debt actually subsists, and that it is not necessary to sell any portion of the realty; or they may show any thing which will reduce the amount of the debt, in order to lessen the quantity of land which it may be necessary to sell. The general rule to direct these inquiries is the following. Whatever defence an administrator may be allowed to make against the claims or demands of creditors, may be made by any person interested in the realty against an application of this nature to sell the land. This is the rule to be extracted from the authorities already cited.

The amount proved should have been deducted from the amount of the order of the Court of Probate, and a sale directed of so much of the real estate as would be sufficient to pay the balance. The Court also erred in refusing to hear testimony in relation to the mesne profits. Lane, in his own right and as creditor, was accountable to Dorman and wife for the use and occupation of the premises, and both as creditor and administrator, he applied to the Circuit Court for an order to sell the premises to pay a debt to himself, while owing the heirs at the same time an amount sufficient to pay such debt. It would be palpably unjust to permit him to sell the land under such circumstances. The Court below, therefore, erred in refusing the testimony. It was also shown that the same land had been sold previously by Lane, under the authority of an Act of the legislature to pay the same debt, and the proceeds of the sale received by him. This Court, by a former decision, declared the Act, under which this sale had been made, unconstitutional and void, and the rule of law is, that a sale under a void authority is also void, and the purchaser can recover back the purchase money. *Lane et al.* v. *Doe,* ex dem. *Dorman et ux.* 3 Scam. 238; 1 Bac. Abr. 261; Chitty on Con. 500; *Newdigate* v. *Davy,* 1 Lord Raym. 742; *Shearer* v. *Fowler,* 7 Mass. 31. The sale by Lane, under the Act of the legislature, was a mere nullity, his receipt of the proceeds no discharge of the debt, and the Court, therefore, on this point decided correctly. For the errors, however, already noticed, we think the decision of the Court below in rendering said decree erroneous, and that the decree ought to be reversed with costs, and the cause remanded with leave to the petitioner to amend his petition.

*Scates, J.* delivered the following separate opinion:

While I concur in the reversal of the judgment, I differ in opinion upon a question, as I think, of much importance in practice. The Circuit Court, as I understand the doctrine laid down in the Opinion, will be required to take an account between the administrator and the estate, of the outstanding

debts and assets, if any can be shown; strike a balance and order a sale to meet the balance thus ascertained. This, in almost every instance, it will be impracticable to do, without summoning the Probate Justice to bring his books and vouchers, and re-adjust the whole account from the beginning. The Court of Probate is vested with exclusive jurisdiction, except perhaps in a Court of Equity by bill, to settle and adjust all matters relative to, and growing out of the administration and settlement of estates, as between the estate, the distributees, and the administrator. The Circuit Court has neither the power, or the means of information to adjust such matters, except upon appeal from that Court.

I have no doubt, but that the Circuit Court might, upon a petition to sell land, hear proofs of assets not inventoried, or accounted for by the administrator; and if it appeared that there was an amount probably sufficient to meet the deficit, to dismiss the petition until the administrator should render an account of them to the Court of Probate. It is quite another thing to take an account with the administrator, and strike a balance with a view of ordering a sale to satisfy it. To do this, the Court must inquire into, and fix a value upon property; ascertain the character of debts due, whether sperate or desperate, and so, upon these uncertain data, adjust an account. The means to do justice in such cases, where many nice and difficult questions might be presented, are inadequate, and the requirement impracticable. If, in resisting the application of the administrator, the defendants should show a sufficient amount of assets not accounted for, the petition should simply be dismissed; and if an amount not sufficient should be shown, the Court might grant the order to sell so much as might be necessary, and send the parties, in both cases, to the Court of Probate, which has ample power to call the administrator to account for further assets, and to adjust all disputes and strike a balance.

There is another point upon which I cannot concur in opinion. The land, upon the demise of the intestate, descended to the plaintiff's wife. If Lane received the rents and profits of the land, he did so as an individual and not as admin-

istrator, for in the representative character, he had no right in, or control over the land, except by petition for a sale. The rents and profits are as much realty, as the land out of which they issue, as to all purposes of the administration. And it makes no difference that he is both creditor and administrator, for he is liable to the heir for the rent, in an action for use and occupation, or for mesne profits; and the debt due him from the estate would be no set-off. If he held a covenant which bound the heirs, he might sue them, and recover to the extent of the value of the land descended. But in no other case could he, as creditor, make the land, or the rents, available to pay his debts, except through the administration, and by petition to sell and convert the realty into assets. The Opinion of the Court, allowing proof of rents accruing subsequent to the demise, to show assets unaccounted for, seems to me to destroy every distinction between personalty and realty, and to overturn the law of descent.

The heir might save the land from sale, by voluntarily paying into the hands of the administrator sufficient to discharge the debts. So she might appropriate this rent to that purpose, by settling with the creditor and discharging his debt; or recovering the amount, and putting it into the hands of the administrator for that purpose. But she cannot give the administrator authority to sue a creditor to recover for rent, or to compel an adjustment of the account with him.

I concur in the reversal upon the ground, that the petitioner below does not show in his petition any excuse f or such great delay in making application for an order to sell. I also concur in the other rules laid down by the Court.

*Decree reversed.*