Jackson, J.
All the real estate of a deceased debtor is, by our law, liable for the payment of his debts. If he dies insolvent, the whole real estate is sold, and the proceeds are divided ratably among all his creditors. If his estate is solvent, each creditor may enforce his lien upon the real estate, against whomsoever he may find in possession of it, whether an heir, devisee, or a grantee of either of them. The claim of the creditor is paramount to every title, that can be acquired after the decease of the debtor. This lien, if it were as unlimited in its duration as in its extent, would nearly destroy all security in any title to real estate ; as it would in general affect all the land in the country, in the course of every successive generation.
There is one limitation of this right of the creditor, which arises out of the nature of the remedy by which alone he can enforce it. The only mode in which he can resort directly to the land of the deceased debtor is, by obtaining a judgment against the executor or administrator ; and, of course, whatever will defeat such an action will * destroy the lien. The administrator may, therefore, protect the land in the hands of the heir, by pleading the general statute of limitations, when applicable to the case.
But it has been settled, that an administrator is not bound to plead that statute, and that it is not waste in him to omit making such a plea. The land, therefore, might still be bound for an indefinite period, at the will of the administrator. He might capriciously permit one creditor to recover, and prevent another whose claims were equally just and equitable ; and, what is worse, he might, by collusion with a creditor, enable him to recover a demand, when, perhaps, if it had been seasonably presented, the heirs, or others inter ested, might have furnished evidence of its discharge.
It is apparently from some considerations of this kind, that the legislature passed the two statutes of 1788, c. 66, and 1791, c. 28. By these statutes it is enacted, that no executor or administrator shall be held to answer to any suit, unless commenced within four yearc after undertaking that trust; provided he give due notice of his appointment as therein prescribed. This provision, as appears by the preamble to the first statute, was made, not only for the relief of executors and administrators, but also to effect the speedy settlement of the estates of deceased persons, which is for the benefit of the heirs. The general effect of this law is, to discharge the lien on the estate in the hrnds of the heir, after the expiration of four years * *136 and this was obviously one of the objects of the legislature in making it. This object will always be obtained, if the administrator does his duty in giving notice of his appointment, and if he pleads this statute of limitation in bar of any action brought after the time prescribed.
If the administrator should omit to give that notice, or should neglect to plead the statute in bar of an action against him, we need not now consider what would be the effect of a judgment against him in a suit commenced after the expiration of the four years ; nor how far it would * conclude the heir, and expose the real estate in his hands to be taken in satisfaction of such judgment. But, if an administrator should find himself embarrassed in such a case, in consequence of bis own negligence or misconduct, and should apply for relief to the discretionary power of the Court, it could not be expected that they should interfere in any manner that might prejudice the heir. They would probably, in such a case, leave the judgment creditor to seek his remedy, either against the administrator as having committed waste, or against the land in the hands of the heir, as he should be advised ; and not order a sale of the land, if objected to by the heir.
In the present case, the objection on the part of the heirs is much stronger. There is no judgment for this debt. The administratrix is not liable to any execution for it ; and the heirs insist that she never will, nor can be so liable. If this is true, she cannot possibly be prejudiced by a refusal to grant the license to sell for which she petitions. If the heirs should be mistaken in this respect, and if a judgment should hereafter be recovered against her, she can easily obtain a license for sale, if by law it ought to be granted, in season to protect herself against any personal liability.
It was suggested in the argument, that the administratrix could not successfully plead the statute of limitations of 1791, because she had repeatedly acknowledged the debt, and promised to pay it. If she alone was interested to dispute the claim, perhaps this statement of her counsel might be considered as conclusive, so far as concerns the present case. But the heirs, out of whose estate the money is to come, if lawfully recovered by the creditor, have a right to deny that fact, and to submit it to a jury for trial.
They may also dispute its legal effect and operation ; unless the promise has been made in writing, and for a valuable consideration, so as to bind the administratrix personally ; in which case the estate in their hands would be exonerated.
* These are questions, which affect their inheritance. If we should order the sale, as prayed for by the administratrix, we should decide these questions conclusively against the heirs. They would be disinherited, to the extent of what should he *137 sold under the order, without any trial of the facts by jury, and without any opportunity of revising the judgment, by writ of review, writ of error, or in any other manner. Whereas, by refusing the order for sale, we are only putting the case in train for trial.
The heirs have offered to take upon themselves the defence of the suit, if any should be brought against the administratrix, and to indemnify her against all personal loss and inconvenience ; and, if they can make out a good defence in her name, there is no reason why they should not be permitted to do it, for the protection of their own estate. To permit an administrator, in such a case, to preclude them from making a defence, would violate that maxim of law which says, that “it shall not be in the -power of any man, by his election, to vary the rights of two other contending parties.” Indeed, it is difficult to imagine any case, in which the Court ought, in the exercise of their discretionary power, to authorize an administrator to sell land to pay the debts of the intestate, when there is no judgment yet recovered against the administrator, and when the heir will give such an indemnity as these respondents have offered.
But it has been argued, that, although there has been no judgment against the administratrix for this debt, yet, as it was secured by mortgage, it is her duty to redeem the land mortgaged.
The effect and the object of this rule in England is, to take the personal estate from those who would be entitled to it under the statute of distributions, and apply it, in ease of the heir, to discharge the real estate descended to him. This reason does not apply in this Commonwealth. The whole estate, real and personal, is liable for all the debts of the deceased ; and by our statute of distributions, the * real estate goes to the same persons, and in the same proportions, as the personal estate.
The effect of granting the petition in this case would be, to take one part of the estate to relieve another part. Suppose this intestate had left but one heir, who now held all his real estate ; what motive could there be, or what obligation, on the part of the administratrix, to sell a part of the real estate to pay this mortgage ? That is, to take from the heir one part of his estate to relieve another part ? Within the four years whilst she is liable to be sued for the debt it may be very proper for her to discharge it in that manner. But, after that time is past, she has no occasion to interfere in the business ; at least, not unless there is judgment recovered against her for the debt. The creditor at present seems to be satisfied with the possession of his pledge ; and, if the heirs think proper to redeem it, they can do it without the aid of the administratrix.
So, in a case where there are two or more heirs, who have had the real estate divided among them ; if any one be evicted of his *138 part, by force of a mortgage made by the ancestor, and which was unknown at the time of the partition, there is no necessity, and would not often be any convenience, in the administrator’s selling any of the remaining land to pay the debt. If the administrator should, under a license for the purpose, sell any of the land assigned to one heir, this would defeat the previous partition, and make it necessary to divide the estate anew. (1) This same consequence would follow upon the eviction supposed by the mortgagee ; and the heirs may as well proceed to make that .new partition, without the interference of the administrator ; and in that case they would estimate the part mortgaged as worth only what it would produce, deducting the amount for which it. was mortgaged.
We have thus far considered this administratrix as having no interest in the question, and as acting merely in her capacity of trustee for the creditors, and the next of kin or heirs. But it appears, that, the land thus mortgaged is part *of what was assigned to her as dower ; and on this account she has manifestly a strong interest to compel the heirs to redeem. This, however, is an interest which affects her only as a dowager, and can make no difference in her rights or duties, as administratrix.
It appears, moreover, that this mortgage was made by the intestate before his marriage with the petitioner, and this recovery against her by the mortgagee is a lawful eviction of her dower. In such a case she is entitled to be endowed anew ; and she will then receive the full third part of all the real estate of her husband, of which she was by law dowable. If the effect of the order of sale now prayed for would be to leave the land in her hands, discharged of the mortgage, and to throw the whole burden upon the heirs, it would be extremely unjust; as it would, in effect, give her a larger portion of the estate, than she could ever have lawfully claimed. The whole real estate of the intestate was not worth so much, by the amount of this mortgage, as it was supposed to be when her dower was assigned ; and her portion of it ought to abate with those of the heirs. On the other hand, if such a sale would defeat the assignment of dower, and the partition among the heirs, then the order would be of no use, either to the widow or heirs ; as the new partition and new assignment of dower may as well be made now, in consequence of this eviction of the widow, as it might be made after such a sale.
The last particular which we have to notice in this case is, the agreement which appears to have been made between the widow and the heirs when her dower was assigned. It is very clear, that we have no authority to try and decide on that agreement, under this petition. If the opposition made by the heirs in this case should *139 appear to be a breach of any contract, which they have made with her, she will, in a suitable action, recover her damages for that breach of contract. So, if they are bound, by any agreement with her, to pay the amount due on this * mortgage out of their own funds, she may sue them on that agreement. But the only question presented to us on this petition is, whether an administrator in the situation of this petitioner, is authorized to sell the real estate of his intestate. We are satisfied, in that view of the case, that the order for sale ought not to be granted ; and we are not authorized, on this petition, to try the validity, or the effect, of any contract made between the widow and the heirs.

 Co Lit. 173.