## DETERMINED IN THE

# Supreme Court of Judicature,

### OF THE

## STATE OF NEW JERSEY,

### AT SEPTEMBER TERM, 1829.

---

*1]  *JOHN DEN *ex dem.* WILLIAM WARRICK *vs.* SAMUEL B. HUNT.

### EJECTMENT.

1. A sale and conveyance by executors by virtue of an order of the Orphans' Court, for the payment of debts of the testator, passes to and vests in the purchaser such estate, and such estate only, as the heir or devisee has in the lands at the time of the making of the order for sale.

2. But since the act of the 12th of December, 1825, a sale under an order of the Orphans' Court, *obtained within one year after the death of the testator or intestate.* will vest in the purchaser such an estate as the testator or intestate died seized of, or entitled to; notwithstanding any alienation or incumbrance thereof made or attempted to be made by the heir or devisee.

3. From the passing of the act of November 2d, 1743, until the year 1799, the sheriff by virtue of an execution against executors and administrators made sale not only of the goods and chattels of the decedent but of the real estate also whereof he died seized.

*White,* for the plaintiff.

*Armstrong* and *Wall,* for the defendant.

The facts of this case sufficiently appear in the opinion of the court, which was delivered by EWING, Chief Justice.

William Matlack, of the county of Gloucester, died seized in fee simple, among other real estate, of the premises in question, which he devised to his son William V. Matlack, who entered and took possession under the will. Afterwards, in the Court of *Common Pleas of the county of Gloucester, judgments were obtained against William V. Matlack, one in December term, 1821, in favor of Samuel Shreve, and another in March term, 1824, in favor of Charles Marquedant. By virtue of executions issued on these judgments, the premises in question were sold on the 20th September, 1824, by the sheriff of the county of Gloucester, and a deed was made by him, in the usual form, on the second of October following, to the lessor of the plaintiff, who in this manner asserts his right to recover in the present action of ejectment. Independent of any other facts in the case, a prima facie title in the plaintiff is hereby shewn : And thus far no question is raised between the parties. But the defendant insists he has a paramount title deduced in the following manner. Rachel Matlack, Abraham Matlack and Richard Matlack, the executors of the will of the said William Matlack, deceased, made application to the Orphans' Court of the county of Gloucester, in June term, 1824, for an order to sell the real estate of the said William Matlack, for the payment of his debts, for which purpose they represented in their petition, that his personal estate was inadequate. Of this application the usual notice under a rule to shew cause, was given to the persons interested; and in the term of December, 1824, a decree was made for the sale of a plantation described therein, and which had belonged to the testator at his decease. On the 23d of March, 1825, due advertisement having been made, the executors sold

Warrick *v.* Hunt.

the premises in question, part of the plantation, to Samuel B. Hunt, the defendant, and on the first of April following made to him a deed of conveyance in the usual form.

By virtue of the proceedings and decree of the Orphans' Court, and of the sale and conveyance by the executors, the defendant insists that he has acquired the estate in the premises of which William Matlack died seized; that the sale and conveyance by the executors, although subsequent to the sale and conveyance by the sheriff, entirely over-reach and defeat the latter; and that he is therefore entitled to hold the premises against the claim of the plaintiff.

Upon these facts some questions of great interest and importance arise and are presented for the examination and decision of the court.

In the will of William Matlack, no power to sell real estate is *given to the executors. From the common [*3 law they had no such authority, not even for the payment of debts. Whatever power or authority, therefore, the executors might exercise over the real estate in question, was conferred by the statute making lands liable to be sold for the payment of debts, and the proceedings under it; and being special and given by statute, must consequently be limited by and coextensive with the provisions of the statute.

By the 19th section, *Rev. Laws* 435, it is enacted, that when any executor or administrator shall discover or believe, that the personal estate is insufficient for the payment of the debts, it shall be his duty to exhibit under oath, an account of the personal estate and debts to the Orphans' Court of the county where the lands, tenements, hereditaments and real estate of which the testator or intestate died, or shall die, seized, do lie, and request their aid; and the court shall thereupon make an order directing all persons interested in such lands, tenements, hereditaments and real estate, to appear on a day to be appointed, to shew cause why so much of the said real estate of the said testator or intestate, should not be sold as will be sufficient for the payment of the debts.

By the 20th section it is provided, that the court shall, at the time appointed, hear and examine the allegations and proofs of the executor or administrator, and other persons interested, and if on full examination the court shall find, that the personal estate is not sufficient, the court shall order and direct the executor or administrator, to sell the whole, if necessary, of the lands, tenements, hereditaments and real estate of the testator or intestate for the payment of his debts, or so much thereof as will be sufficient for that purpose. And the 21st section provides for the manner of advertisement and sale. If the legislative provisions on the subject terminated here, a ready and perhaps safe conclusion might be drawn, that the legislature designed to subject to sale the estate of the testator or intestate, as it stood at his decease. But the legislature have thought proper to add further provisions, to direct the execution of a deed and to declare its effect and operation. By the 22d section it is enacted that the said executor or administrator shall make a deed to the purchaser for the lands so sold, which deed shall set forth the order at large, and shall vest in the said *4] purchaser as good and perfect an estate *in the premises therein mentioned *as the heirs or devisees of the said testator or intestate, were seized of, or entitled to, at the time of the making of the said order by the Orphans' Court.*

The language of this section is too plain and explicit to admit of doubt, or diversity of opinion or construction. Without the deed contemplated by it, no estate passes to the purchaser; and the deed is to vest in him, not the estate which the testator or intestate was seized of, or entitled to at his decease, but as good an estate as the heir or devisee was seized of or entitled to at the time of the making of the order for sale.

If argument or illustration beyond the words of this section, be required, they are at hand, and of the most persuasive character. The sections already referred to, are contained in the act of the legislature of the 18th of

Warrick *v*. Hunt.

February, 1799, and were substituted for the 11th and 12th sections of the act of the 16th of December, 1784, which were in force until thereby repealed. The 11th section authorized the Orphans' Courts to order, direct and decree, the executor, administrator, or guardian, in case of deficiency of personal estate, to make sale of real estate to pay just debts and maintain children. The 12th section directs the executor, administrator or guardian, to make a deed of conveyance to the purchaser, by which deed of conveyance, says the statute, " the purchaser or purchasers, shall be and are hereby declared to be vested in as good and perfect an estate *as the owner of such lands, tenements or real estate was seized of at the time of his or her decease.*" To say that these clauses, with words so essentially different, bear the same meaning, would do violence to all just principles of construction ; and the persuasion is irresistible, that the legislature, with the act of 1784 before them when they enacted that of 1799, intended in the latter a change in the effect and operation of the deed, no less essential than they have so plainly expressed.

In the course of the argument, the counsel of the defendant insisted that from the earliest settlement of New Jersey, lands have been held subject to the demands of creditors, that the lands of a decedent have always been regarded as assets for the payment of debts ; and that hence results the right of the creditors and the power of the executor or administrator, thus to appropriate them, free from any shackles which may accrue subsequent *to the decease of their owner, or [*5 may be imposed by his heirs, or devisees. Now the proposition may be safely admitted that lands in case of a deficiency of personal estate are or may be made assets for the payment of debts, or perhaps more correctly speaking in the words of the act, the monies arising from the sale shall be considered assets ; but the question still recurs, in what manner and to what extent may authority over them be exercised by an executor or administrator ? From what

time does the exercise of such authority bind them ? and when sold by the executor or administrator, what estate does his sale vest in the purchaser ? To solve these questions we must resort to the acts of the legislature. We have no common law, no custom or usage, sanctioned and witnessed by judicial authority, to which we can refer. In our legislative history, a very material change in the subject under consideration will be found, between the early and the present time. To trace the progress of legislation on this topic from the grants and concessions of West Jersey, and the act of East Jersey, of 1676, would afford matter of curious and not unprofitable research. For the present, however, we need not look further back than the 2d of November, 1743. By an act of that date, *Allinson* 129, after a preamble reciting that it is reasonable and just that the real estate of every person or persons in this province should be subject to the payment of his, her or their debts ; it is enacted that from and after the publication thereof, the hereditaments, real estate, houses and lands, situate or being in any part of the province, belonging to any person or persons whatsoever indebted, shall be liable to, and chargeable with, all the just debts, duties and demands of what nature and kind soever, owing by or due from any such person, to his majesty, or any of his subjects, and shall be and hereby are made chattels for the satisfaction thereof, in like manner as personal estate within this province is legally sold or disposed of for the satisfaction of debts. A subsequent section provided that the sheriff, in making sale, should first dispose of the personal estate. In this act of the legislature, we find no clause in express terms, subjecting the lands of a decedent to be taken-and sold under an execution against his executors or administrators ; but inasmuch as the lands are made chattels for the satisfaction of debts, and to be seized, sold and disposed of, in like manner as personal estate, it followed, as a necessary consequence, *that the writ of fieri facias, which previously commanded the sheriff to

make the debt or damages, of the goods and chattels in the hands of the executor or administrator to be administered, should be enlarged to reach the "hereditaments, real estate, houses and lands." Such was the form given to the execution after the passing of the act, and from that time until the year 1799, the sheriff made sale, not only of the goods and chattels of the decedent, but of the real estate also, whereof he died seized. In *Den* v. *Jones, Coxe* 131, a case decided in the year 1792, and arising under the act of 1743, it was held that a sale made by an heir, pending an action against the administrator, on which judgment was afterwards obtained, could not prevail against the judgment, but by execution on it the real estate thus sold, might be seized and sold. In delivering their opinion the court said, "Lands are assets in the hands of an executor or administrator for the payment of debts, and upon an action brought against either, the real estate of the testator or intestate, are chattels, may be taken in execution and sold for the payment of debts, and this without making the heir a party to the suit." Although a sale might thus be made by the sheriff, the executor and administrator remained, without any direct control or authority over the real estate for the payment of debts, or in other words, the executor or administrator could not as such, by his own authority, or under the direction of any court, make sale of the real estate, and apply the proceeds to satisfy the demands of creditors. In the year 1784, the legislature organized a new tribunal in the several counties called the Orphans' Court, and enabled executors or administrators under the decree of that court, as I have already mentioned, in case of deficiency of personal estate, to sell the real estate not only for the payment of debts, but also for the maintenance of children. On the seventh of March, 1797, an act was passed enabling creditors, whether by simple contract or specialty, and whether the heirs are mentioned therein or not, to maintain actions against the heirs and heirs at law, of any debtor dying intestate, seized of messuages, lands, tene-

ments or· hereditaments, and against the heir and heirs at law, and devisee and devisees of such debtor, in case such debtor made any last will and testament—and declaring that where any heir or heirs at law are liable to pay the debts of an ancestor in regard of lands descended, and shall alien the same *7] *before action brought or process sued out, the heir or heirs shall be answerable for such debt to the value of the land so aliened, and execution may be taken out against the heir or heirs to the value of the lands descended; but the lands, tenements and hereditaments bona fide aliened before the action brought, shall not be liable to such execution. The same act also renders the devisee or devisees liable and chargeable in the same manner, and to the like judgments and executions, as the heir and heirs at law. On the eighteenth of February, 1799, the legislature repealed the act of 1743, and the 11th and 12th sections of the act of 1784, and enacted a new statute, making lands liable to be sold for the payment of debts, and altering the law on the subject in some important particulars. The first section of this statute coming in the place of the first section of the former, instead of like it, declaring the real ·estate of any person to be chargeable with his debts, and chattels for the payment thereof, simply enacts that all lands, tenements, hereditaments and real estate, shall be liable to be levied upon and sold by execution to be issued on judgments to be obtained in any court of record, except courts for the trial of small causes, for the payment and satisfaction of the debt, damages, sum of money and costs recovered. In the 18th section, it is enacted that no lands, tenements, hereditaments or real estate of any testator or intestate, shall be sold or in any wise affected by any judgment or execution against executors or administrators. Since the passage of this act, the real estate of the decedent has no longer been taken or sold as before, under execution against the executor or administrator for the payment of debts ; and the deed to be made by the executor or administrator on the sale by

Warrick *v.* Hunt.

virtue of the authority of the Orphans Court, instead of vesting in the purchaser, as under the act of 1784, as good and perfect an estate as the owner was seized of at the time of his decease, is under the act of 1799, now the law of the land, to vest as good and perfect an estate as the heirs or devisees were seized of or entitled to, at the time of making the order of sale by the Orphans Court. In the act of 1799, I find no support for the doctrine strenuously urged by the counsel of the defendant, that creditors in New Jersey have for the payment of their debts, a lien on the personal and real estate of the decedent. No such lien in a strict or technical sense, I apprehend, exists. The personal estate is, and the real estate *may be made, assets; [*8 but neither is, technically speaking, under a lien, neither of them becomes by the decease of the owner, subjected to a pledge or mortgage for the security or satisfaction of the debts. If such were the law, a purchase of goods and chattels at the public sale, which usually takes place soon after the decease of the owner, could not safely be made, for the purchaser would, at the least, be held to see to the application of the purchase money; and if the executor or administrator failed to apply it, in discharge of the debts, would be responsible to the claims of the creditors. On what ground then can this doctrine of lien be sustained? Not on the first section of the act of 1743, which makes the real estate chargeable with debts, for the same course of reasoning would give to the creditors the like lien in the life time of the owner, and before they had obtained judgment against him. Nor can it rest on any general usage or supposed local common law of the state as suggested at the bar; for if such local common law can exist in our state, no place can be found for it in regard to the subject under consideration, which probably, at all times, certainly since the act of 1743, has been regulated by statute. I am aware that some expressions have been used by judges which seem to countenance the doctrine of which I am speaking; but

when they have used the term lien in this connection, they have, as I apprehend, employed it in a figurative, not in a strict or technical sense ; to shew the general claim or right of creditors to an appropriation of the estate for the satisfaction of their demands, and not to assert over it, on behalf of the creditors, a fixed vested right, which goes with the estate wherever it may pass, until legally removed.

Upon the argument, the counsel of the defendant pointed out very forcibly, and I think very satisfactorily, the inconvenience and injustice which may frequently result from giving to the order of the Orphans Court no binding force, at any earlier period than the time of making it; and they demonstrated, as I am inclined to believe, the superior policy and expediency of the rule of 1784. The legislature have some time since foreseen these evils and have provided a preventive remedy, so far as in their judgment the public good required it. On the 12th December, 1825, it was enacted that the lands, tenements, hereditaments and real estate, of any person who shall die seized thereof, or entitled to the same shall be and remain liable for the payment of his or her debts *9] for *one year after his or her decease, and may be sold by virtue of an order of the Orphans' Court of the county where such lands, tenements, hereditaments and real estate, shall lie, if obtained within the said period of time, any alienation or incumbrance made or attempted to be made, by his or her heir or heirs, devisee or devisees, to the contrary notwithstanding. From the language of this section the opinion of the legislature on two points applicable to the subject before us, may be fairly deduced : 1st, that without this act the alienation or incumbrance of the heir or devisee prior to the order, within the year, would have prevailed over the order. And, 2d, that after the expiration of the year the real estate may be aliened or encumbered by the heir or devisee, if done prior to the order, so as to preclude its operation and effect.

A short time antecedent to the passing of this act, the case of *Parret* v. *Van Winkle,* was determined in the Court

of Chancery, and is, perhaps correctly, supposed to have called the attention of the legislature. In that case the question was between a mortgage of lands descended, made by an heir after the decease of his ancestor, and a purchase under a decree of the Orphans' Court, subsequent to the mortgage for the sale of the land, to satisfy the debts of the ancestor, in consequence of a deficiency of the. personal estate. Chancellor Williamson decided in favor of the mortgagee, holding him to be entitled to preference over the purchaser at the administrator's sale. The 22d section of the act of 1799, he said, " fixes and determines the title which the purchaser acquires by his purchase." He farther said, that he considered it perfectly manifest that the legislature only intended, " to subject the lands descended to be sold under such an order [an order of the Orphans' Court] so long as they remained in possession of the heir, and that they did not intend to authorize a sale of the lands descended after they had passed to a fair bona fide purchaser."

In the state of New York it has been held that " if the executor applies in behalf of the debtor to the surrogate, and the land be sold, it avoids all mesne conveyances since the death of the testator." *Mooers* v. *White*, 6 *John. C. Rep.* 381. And in Massachusetts, the claim of the creditor is paramount to every title that can be acquired after the decease of the debtor, *Scott* v. *Hancock*, 13 *Mass. Rep.* 162. But the statutes of those states are so radically different from our act, that no just reasoning from the one can apply *to the other. In New York the conveyance of the [*10 executor or administrator, which is required to set forth at large the order for the sale of the judge of probate or the surrogate, is expressly declared to be valid and effectual against the heirs and devisees of such testator or intestate, and all claiming by, from or under them. *N. Y. Rev. Laws, edit. of* 1807, *sec.* 21 *fol.* 324. In Massachusetts the real estate is charged with the debts of the deceased, and is made liable to be taken in execution upon judgments against

executors or administrators for the proper debts of the testator or intestate. *Stat.* 1783, *sections* 1, 3, 7, *Gore* v. *Brazier*, 3 *Mass. Rep.* 523.

From this review of the subject it is, in my opinion, clearly shewn that under the act of 1799, and independent of that of 1825, which having been enacted long since the sale in question, has no operation upon it, the conveyance by the executor or administrator passes to and vests in the purchaser such estate and such estate only, as the heir and devisee has in the lands at the time of the making of the order for sale. Hence, in the present case, the enquiry is presented, what estate William V. Matlack, the devisee, had in the premises in the month of December, 1824, the date of the decree of the Orphans' Court under which the defendant claims title. The sale under the executions against him, as already stated, took place on the 20th September, 1824, and the conveyance was made by the sheriff on the ensuing 2d of October. The application by the executor to the Orphans' Court, for the order for sale was presented at June term, 1824. And to the same term of the Court of Common Pleas of the county, was returned a writ of summons at the suit of John Clement against the executors for a debt of the decedent. At the sale made by the sheriff, one of the executors caused a written notice to be read that the land was subject to "Wm. V. Matlack's proportion of his father's debts, to which the land was left subject, together with his share of the legacies, $800, and that an order would be obtained from the Orphans' Court in October, for the disposal of the said land for the payment of William V. Matlack's proportion of his father's debts and legacies. The application to the Orphans' Court in June, 1824, gave no lien on the real estate, nor did the commencement of the suit against the executors by one of the creditors. The sale and conveyance by the sheriff are without exception as to regularity and form. *11] *Hence all the estate which William V. Matlack had

in the premises, passed to the purchaser, and none remained in him in December, 1824, if the alienation was made in good faith. And the question of fraud alone remains to be examined. Of actual fraud in the devisee or in the purchaser, the case affords no proof, nor even suspicion. Not the faintest shade appears, of collusion between them to defraud the creditors, or of any other unjust purpose. So far indeed as respects the devisee, the sale may have been and probably was made in invitum. Warrick was not one of the plaintiffs in execution against William V. Matlack, nor, so far as we discern, in any wise an agent in bringing about the sheriff's sale. He was simply a purchaser, at a public vendue, made by an officer of the law, bidding more for the property than any other person, willing to take whatever estate the officer could legally sell and convey, and incurring all the risks of title to which such a sale is subject. But he knew the land had belonged to William Matlack at his decease, that his debts were not yet paid, and that the application to the Orphans' Court had been made. Is he, therefore, liable to the charge of implied or legal fraud? To this question the controversy is narrowed. When, by the notice at the sale, the information it contained was communicated to him, he was bound to make all proper enquiry. We may presume he did so. He found no lien as yet on the premises; the law raised none in favor of creditors, and the order for sale was not yet made. He found an alienation in good faith by the devisee, permitted by the law. The state of the case does not shew, either directly or by any just inference, that the purchase was made with a view or purpose to defeat the proceedings in the Orphans' Court, or to assist Matlack the devisee to injure or defeat the creditors. If such purpose had been shewn, the sale of the executors must assuredly have prevailed. The question of fraud, says Chancellor Kent, depends upon the motive. Though there be judgment against the vendor and the purchaser has notice of it, the

fact will not of itself affect the validity of the sale of personal property; but if the purchaser knowing of the judgment, purchases with the view and purpose to defeat the creditor's execution, it is iniquitous and fraudulent notwithstanding he may have given a full price, for it is assisting the debtor to injure the creditor. 2 *Kent. Com.* 403. Inasmuch as no fraudulent motive is stated or can be *12] correctly *inferred; inasmuch as the law as it then stood had not created a lien; inasmuch as a sale by the devisee was not forbidden, but allowed, I can see nothing to prevent the purchase by Warrick; I find no ground on which a charge of legal or implied fraud can be sustained. If a man purchases land for a valuable consideration, from an heir, with notice of the ancestor's bond debts, it is said that the bond debts will not affect the purchaser in equity, so as to make him liable for the application of the purchase money. *Gilb. Lex Pretor.* 293.

On the argument it was said by the defendant's counsel, that Warrick was a volunteer in his purchase, and, therefore, entitled to no claim of favorable regard. In this respect he and his adversary appear on equal ground, and each, therefore, can seek, as to the other, only his fair and just rights. Hunt, the defendant, was in the same respects a volunteer. He was not one of the creditors of the testator, and at the time he offered his bid to the executors, he had notice given him of the previous sale and conveyance by the sheriff to Warrick. Yet I am not willing to impute to him legal fraud, although he knew that if his bid was effectual and legally sustained, Warrick would lose whatever money he had paid on his purchase.

Upon the whole case, I am of opinion that the sale and conveyance by the executors passed on estate in the premises to the defendant, the devisee, William V. Matlack, having no estate therein at the date of the order for sale; that the defendant has, therefore, failed to shew the paramount title relied on for his defence; and that the plaintiff ought to have judgment.          Judgment for the plaintiff.