## Bulah French *versus* Lemuel S. Pratt.

At common law, a widow is entitled, in the assignment of dower, to one third out of each tract or parcel of the land. And this method of endowment is denominated " according to common right."

But where the dower is assigned by the heir, he may assign the whole of one or more of the several tracts in lieu of a third of each one, which will be a good assignment, if accepted by the widow. And this is called an endowment " against common right."

If dower be assigned " according to common right," and the widow be evicted, by paramount title, of the third assigned to her in one parcel, she is entitled to be endowed anew in the remainder of that parcel. But if the widow be endowed " against common right," and be evicted of a part of the land assigned to her, she can have no new assignment of dower by reason thereof.

And if a widow be endowed " against common right," according to the course of proceedings under probate jurisdiction, and be evicted by paramount title, of a part of the land so assigned to her as dower, this gives her no right to be endowed anew in other lands, either at common law, or under Revised Statutes, c. 95, § '14.

The action was dower. The demandant claimed dower in the premises as widow of Zadock French, deceased, alleged to be seized thereof during the coverture.

Among other alleged grounds of defence, the tenant, by brief statement, averred that she had an assignment of dower in all the real estate of her late husband, under the authority of the probate court, which gave her certain entire lots in lieu of one third of each lot in which she was entitled to dower in the whole estate; that she accepted of the same as her dower; and that the heirs assented to the assignment. The demandant replied that she was lawfully evicted from a portion of the land in which the dower was assigned.

After the whole evidence was out, the case was withdrawn from the jury and submitted to the decision of the Court, who were empowered to enter a nonsuit or default; and to draw all inferences a jury would be authorized to draw.

The facts are stated at the commencement of the opinion of the Court.

The case was argued in writing.

*Moody,* for the demandant.

It is for no doubtful right or remedy, that the demandant asks the interposition of the Court but for a manifest right and plain remedy — the one acknowledged, and the other afforded by the explicit provisions of our statute law, and the clear principles of the common law. Rev. Stat. c. 95, § 14, provides, " If a woman be lawfully evicted of lands assigned to her as dower, &c." " she may be endowed anew in like manner as though no such assignment had been made." This language appears intelligible, clear and unambiguous, and to convey a distinct idea of a right and a remedy. Does this mean what it seems to mean, and is it to be of force to effect what it seems to promise? or does it keep the word of promise to the ear, to break it to the hope?

The plaintiff's case, I say, is the case expressed in clear language in the statute; she has been deprived by a lawful eviction of land assigned to her as dower, and she asks of the Court nothing more than the application to her case of that statute remedy.

But if ingenuity could suggest a doubt as to the meaning of the language, the principle which it seems to declare is one well settled by judicial decisions. If a widow be at any time lawfully evicted of her jointure, (which is a provision in lieu of dower,) she may repair the loss or deficiency by resorting to her right of dower at common law. 4 Kent's Com. 54, 69.

Every assignment by the heir, or sheriff, of dower, implies a warranty so far that the widow on being evicted by title paramount may recover one third of two remaining third parts of land whereof she was dowable. *St. Clair* v. *Williams,* 7 Ohio R.; Cruise's Digest, 200, § 26, part 2, 110 ; *Bedingfield's case,* 9 Coke's Rep. 176.

The third point decided in the last case is, that when the wife is endowed of the immediate estate descended to her husband's heir, if she be afterwards impleaded, she shall vouch the heir and be newly endowed of other lands which the heir

has.    4 Coke's Rep. 122; *Hastings* v. *Dickinson,* 7 Mass. R. 153; *Scott* v. *Hancock,* 13 Mass. R. 168; 1 Metc. 66.

If a wife endowed of her third is evicted, she shall have a new writ of dower, and be endowed of other lands.    2 Dane's Abr. 670 ; Stat. 27, Hen. 8, c. 10.

The assignment of dower must be of land whereof she is dowable, and an assignment of other land whereof she is not dowable, or of a rent arising out of the same, is no bar of her dower.    Coke Lit. 34, b.

In some cases she shall have a new assignment of dower, as when she is evicted out of the lands assigned to her, she shall be endowed of one third of the remainder.    1 Cruise's Digest, 198, sect. 18.

The position is established by these authorities, that without a statute provision, a widow on failure of her dower, in whole or in part, by eviction, is entitled at common law to amends by a new assignment, and that an action of dower lies for her.

But if the question were a new one, common sense and common justice would alike demand such an adjudication. The purpose of the law of dower, is to put the widow in possession of a life estate in one third of the lands of her husband, not of any other person.    That is her title and her right, and if by mistake of the heir, by a wrongful exercise of jurisdiction on the part of the court of probate, or by the consequences of her husband's acts, she is put in possession of lands not his, or upon which a paramount claim of a stranger exists, by the enforcement of which she is driven off, the purpose of the law is not accomplished — she is not endowed of her husband's lands — she has not any longer her right, that right which no earthly power can gainsay, the right of a life estate in one third of the lands of her husband.    And when the mistake or the error is discovered she is entitled to have it rectified — to have the deficiency made up to her, and the proceedings in the attempted assignment necessarily become *quoad hoc* null and void. — That a foreclosure of a mortgage is a legal eviction — see *White* v. *Whitney,* 3 Metc. 81.    So is the yielding to a paramount title of one demanding possession.    4 Mass. R. 349.

The statute and the common law which give this remedy contemplate precisely this state of facts; they suppose an assignment, an acceptance of said assignment; and an enjoyment for a time, of the lands assigned.

The objection set up in the brief statement then involves a statement of the very facts necessary for the plaintiff to establish, to maintain her action — to bring herself within the purview of the statute.

But the proposition that she has so barred herself, by the very acts and facts, which by statute alone constitute her claim, is not only wholly inadmissible, but quite unintelligible. There is no proof of any formal acceptance. What did she do? She petitioned for her dower, as the statute giving her the remedy sought, supposes, and as the law authorizes, she entered upon the lands assigned her by a Court having jurisdiction. This is all. She made no bargain, executed no deeds, signed no release, made no contract to take other lands in full satisfaction, or in lieu of any other claims. Besides, the law does not give the widow a choice what part of the land shall be assigned to her, provided she gets one third in value. *Taylor* v. *Lusk*, 7 J. J. Marsh, 636.

She could not successfully have resisted the action of the Court, for they had a right to assign her lands under mortgage. *Wilkins* v. *French*, 20 Maine R. 118. But even if she knew the mortgage, and her liability to be deprived of that land, which is denied, such knowledge cannot affect her, and she forfeited no rights by it. If the Court had a right to assign it, she had a right to take it, a right to submit to the Court in the reasonable expectation of the mortgage being discharged and with a full knowledge that if she was deprived of the property, the law would give her other property instead of it. 2 Rep. 59; Perk. sect. 420.

Another ground of argument may be anticipated from the language of the pleading, that this was an assignment against common right, because the Court gave her several entire parcels, instead of one third of each parcel, and that having entered under it that act is to be construed into an acceptance

and release.  How does  this  conclusion  follow  from  the premises any more than if it was not against common right? It involves, again, as much as before, the glaring injustice of making her responsible for the mistakes of a court of competent jurisdiction, to which it was not in her power to refuse submission.

This is not strictly an assignment against common right,. as it is defined in the books.  Cruise, after speaking of an assignment by the sheriff, says, " But when dower is assigned by the heir, he may assign one manor in lieu of a third of three,. which will be good if accepted by the widow, and this is called an assignment against common right." 1 Cruise's Digest, 197 ; 1 Rol. Abr. 683.

To make it technically such, it must be made by the heir. And the case which will be mainly relied on by defendant's counsel, was that of an assignment by the heir.  But an assignment made by the court of probate, if made consistently with the rules of law, cannot be said to be against common right, in any sense which can affect the validity of the assignment, or work any other consequences to the petitioner, than if it was made differently.

That this assignment was made  upon principles well settled and often recognized by the Courts, can  hardly be questioned, after we find that the Courts have in many cases declared that the assignment must be made so as to set off not one third of each parcel, but such parcels as will yield to the widow one third of the income, and in parcels best calculated for the convenience of herself and heirs.  *Leonard* v. *Leonard,* 4 Mass. R. 533 ; *Miller* v. *Miller,* 12 Mass. R. 454; *Conner* v. *Shepard,* 15 Mass. R. 164.

In this case, the demandant has  done no more than petition for her legal dower, and enter upon such land  as the Court in their discretion, set off to her as her legal dower.

She has submitted to the authority of the Court, nothing more.  And shall this operate as a release of her claim to dower, and prevent a new assignment ?

Dower is a claim highly favored in law.  Lord Coke says,

"it is commonly said that three things be favored in law, life, liberty and dower." Co. Lit. 124, b. And nothing but her own release can bar her of the right.

To bring the force of analogy against it, I will cite a few cases to show what acts of the widow have been decided not to bar her dower. *Hastings* v. *Dickinson*, 7 Mass. R. 153; *Gibson* v. *Gibson*, 15 Mass. R. 106; *Catlin* v. *Ware*, 9 Mass. R. 218; *Hildreth* v. *Jones*, 13 Mass. R. 525; *Robinson* v. *Bates*, 3 Metc. 40; 4 Kent, 54.

The Court will not be deterred by a difficulty, if there be any, in extending a remedy, to which the plaintiff has a legal right.

Be the right declared, and although the plaintiff has used in her action, the common form of declaring for one third, she will be satisfied, and indeed wishes for no more in this and the other cases, than that proportion of each parcel which will make good her loss.

And there will be no difficulty, though perhaps some little labor for commissioners appointed as in ordinary cases, to ascertain that portion. Must she recover one third or nothing, as defendant contends, dower being one third?

*Cutting*, for the tenant.

Assuming that the plaintiff has succeeded in establishing by legal testimony the necessary preliminary acts, then the question arises, is she, under the circumstances of this case, entitled to dower?

I say that she is not, because she has heretofore been endowed of other lands to the full extent of her legal and equitable claims in all the lands. Her counsel contends that she is, because she has been lawfully evicted of a part of her assigned dower, and relies on chap. 95, § 14, R. S. which is, "If a woman be lawfully evicted of lands, assigned to her as dower, or settled upon her as a jointure, or deprived of the provision made for her by will, or otherwise, in lieu of dower, she may be endowed anew in like manner, as though no such assignment or provision had been made."

Zadock French died Dec. 30, 1830. Plaintiff petitioned

judge of probate for dower, July 26, 1831. Warrant from judge to assign dower issued same day. Return by commissioners, Aug. 29, 1831. Return of dower accepted by decree dated, Aug. 30, 1831.

The estate returned by commissioners, of which plaintiff was dowable was valued at $61,199,50. And the commissioners return, that "they have set off to plaintiff one full third part of said estate for her dower therein," which would amount in value to $20,399,83. It will be perceived that the commissioners assigned not the third part of each lot, but in lieu thereof distinct and separate lots.

To this assignment the widow made no objection, but assented ; she did not appeal from the decree accepting said return ; entered into possession, and conveyed by deed some of the lots, received the rents and profits of the whole, and still receives them, excepting the Exchange, which she received nearly 11 years.

Now this case is precisely the case of *Jones et ux.* v. *Brewer*, 1 Pick. 317, where the Court say, "This was an assignment against common right. An example of such an assignment in the books is, where the heir, on the acceptance of the widow, assigns one manor, in lieu of a third part of each of three manors. It is a principle, in such cases, that she takes subject to all incumbrances by the husband. Co. Lit. 32, a, and note 197. If the estate assigned, turns out to be more valuable than a third, she may still hold it ; and on the contrary, if it proves less valuable, she must bear the loss."

If it be contended that the case at bar differs from the case cited, because this is assignment by probate and that by deed, then I will refer to the deed in which it appears, that the estate " was assigned to her for her life, as and for her dower, and to be holden in full satisfaction of her dower and subject to all the conditions and liabilities of dower, and with all the privileges and incidents to dower belonging and appertaining." So that the deed was of the same force and effect as though assignment had been made by decree of probate judge, " subject to all the conditions, &c.," and one of the incidents to dower is, that the widow may be evicted. " If the estate

assigned turns out to be more valuable than a third, she may still hold it." Mark this language, for it is particularly applicable to this case, for if the plaintiff was not dowable in the Exchange, then it should not have been appraised among the other estate of her husband; then deduct the sum of $10,000, from the appraisal, and it will leave $51,199,50, of which she was dowable, one third of which is $17,066,50, instead of the $20,399,83, the dower assigned, a difference in her favor of $3,333,33, — a sum, for which the widow could well afford to run some risk — a sum which would support any ordinary widow.

Again, this risk was one anticipated and assumed by the plaintiff. She knew of the mortgage to Peters, for she had signed the deed relinquishing her dower; and she had previously signed Ebenezer French's bond to account for the proceeds of real estate to be sold under license from this Court, by paying the debts due from the estate, among which was this very debt due to Peters, as appears by said French's list of claims filed in probate office and the judge of probate's certificate to this Court, as a basis for said license. The conclusion is inevitable, therefore, that she relied on her son Eben, (the administrator,) that he would discharge his duty and pay the debts and thereby discharge this mortgage. One of the conditions of his said bond was, "That if he shall observe the rules of law for the sale of real estate by executors or administrators and shall dispose of the same and account for the proceeds thereof agreeably to the rules of law, then, &c."

Now the said administrator, as well as the judge of probate, certified to this Court, debts amounting only to     $29,624,78, and personal property to     .     .     .     2,860,88,

leaving a balance to be paid by sale of real estate, of  26,763,90.

Said French testifies that he sold under said license, from $25,000 to $30,000 worth of real estate. He must also have had a large income from rents which would go into the funds of the estate for discharging debts. Then who can pretend, if said administrator had discharged his duty accord-

ing to the conditions of his bond, in " accounting for the pro-ceeds," the Peters debt would not have been paid and his mortgage discharged? And if the plaintiff, his mother, had not, through parental affection, signed his bond, she might have had her remedy on it, for the principal in that bond has never to this day accounted for a single dollar. Now if any one is to suffer, who should it be, the innocent purchasers under the administrator's sale, or the plaintiff, his surety?

Said French further testifies, that " he could have paid $5,000, in 1835, almost any time." From what funds? Certainly from the funds of the estate. Why did he not pay Peters then, and comply with the conditions of his bond? And why did not the plaintiff see that it was done ? Because she then relied on the integrity and ability of her son to dis-charge the mortgage at any time, and never had the least idea of ever calling on purchasers of other real estate to contribute in dower.

I may well say then, that she accepted of the Exchange as part of her dower, knowing of and assuming the risk respect-ing the mortgage.

And if by her own neglect, or the neglect of the adminis-trator, or for any other cause, she has been evicted, she must meet that contingency, for it was one by her assumed.

But I have another answer to this suit. The assignment of the Exchange, was a legal assignment ; it entitled the plaintiff to redeem and to hold the whole estate during her life, and an estate through her descendible to her heirs; or in the words of C. J. Whitman, in case the widow redeem, " she would hold during her life, and her heirs after her, until the amount paid by her, had been refunded." *Wilkins* v. *French,* 20 Maine R. 118. This decision then settles this case beyond all doubt; for if the widow had the power to redeem by paying merely the interest on the amount due on the mortgage, and neglected it, it is now too late for her to complain; she has been evicted through her own neglect. The decision in Wilkins and French was made in June Term,

long before the mortgage was foreclosed, consequently she knew her rights.

And now I would appeal to common sense, if I may here be allowed to appeal to such a deity, how this Court, after solemnly deciding that the dower thus assigned was legally assigned and gave the widow such rights, if she chooses not to avail herself of them, she shall subsequently be allowed to disturb the title of 300 individuals, who purchased and had no such rights to redeem?

But there is another and distinct reason why the plaintiff should not sustain her action, for it appears that she was endowed to the amount of $20,399,83, and has been evicted of such endowment only to the amount of $10,000 ; and she still retains (excepting what she has sold,) the balance, viz : — $10,399,83.

How then can she "be endowed anew in like manner as though no such assignment had been made?" for such is the language of the statute.    Shall she retain this $10,399,83, and also be endowed in one third of all the other real estate owned by her husband during the coverture? for such is the claim in this case.  If so, the result would be this—she would be dowable in one third of $61,199,50, deducting the Exchange $10,000, viz. $51,199,50, one third of which is $17,066,50, to which add the dower which she still retains, viz. $10,399,83, and it will amount to $27,466,33, the very modest claim which this widow now makes.    And there is no such thing as a fractional part of dower; such a thing was never known; and the statute says she shall be endowed anew as though no such assignment had been made.

She has not released the balance, neither can she, for she has sold a part of it.

The Court, I know, will give this case due and weighty consideration ; it involves hundreds of other suits, besides 6 or 8 now pending, as many suits as there are lots of land in the commissioner's schedule, yea more, for they have been divided and sub-divided and owned by different individuals.    The plaintiff has no equity in her claim ; she is in possession of a

French *v.* Pratt.

large estate, as dower, much more than enough for her support. This is an attempt by heirs ; an experiment which I apprehend neither law or justice will sanction.

The opinion of the Court was drawn up, and read, June 30, 1848, by

Tenney J. — In Dec. 1830, Zadock French, the husband of the plaintiff, died intestate. According to the inventory returned to the probate office by the administrator upon his estate, the personal property was appraised at the sum of $2,680, and the real estate of which the intestate died seized, at the the sum of $59,819. The claims returned as existing against the estate amounted to the sum of $29,624,78, in which was included a note held by E. D. Peters, secured by a mortgage given by the intestate upon the Penobscot Exchange Coffee House, and certain lots of land connected therewith. In the mortgage deed the plaintiff relinquished her right of dower in the premises conveyed. Upon the note so secured there was due on Jan. 19, 1831, the sum of $10,600.

On the petition of the administrator he was authorized by the Supreme Judicial Court, at a term held in the county of Penobscot, on the second Tuesday of June, 1831, to sell real estate of the intestate sufficient to pay the sum of $25,000, of the just debts and incidental charges. On July 26, 1831, upon the petition of the plaintiff, a commission issued from the probate court, directing the assignment of dower to her of all the real estate of which her husband died seized ; upon which the commissioners returned their appraisal of all such real estate at the sum of $61,199,50, the lot out of which dower is claimed in this action being a part; and that they had assigned to the widow, one full third part of all the real estate of which the intestate died seized. The assignment was of certain entire lots, instead of one third part of each, including the Exchange Coffee House, and the lots connected. The report of the commissioners was accepted by the judge of probate, without objection, and the widow entered into the actual possession of the estate assigned to her, and in a part

of which she has since conveyed her interest. She occupied the Exchange Coffee House herself, or by her tenants, till March, 1842, when the mortgage thereon, to secure the note held by Peters, was foreclosed. The other portions of the estate assigned to her, she still possesses. It appears that the administrator made sale of real estate of the intestate under the license, and from the avails and other means, paid debts due from the estate to the amount of from $35,000 to $40,000, and that the note of Peters was reduced in its amount in the fall of 1835 to about $4,000 or $5,000; and that he was unable to pay this balance. The administrator has never made any return of his doings to the probate office, since he was licensed to sell, nor made any settlement of his administration.

This is an action of dower, *unde nihil habet*, wherein the plaintiff demands against the defendant her just and reasonable third part of lot No. 57 in Bangor. The tenant in his defence, among other grounds, relies upon this, that there was assigned to the plaintiff not one third part of each lot of land of which the intestate died seized, but there was assigned to her certain entire lots and messuages in lieu and instead of one third part of each lot of which the intestate died seized, by commissioners appointed by the judge of probate upon her petition; that the return made by the commissioners, was duly accepted and recorded; and that the said assignment was accepted by the plaintiff as and for her dower, and by and with the consent of the heirs of the intestate. The plaintiff, in a counter brief statement, admits the assignment referred to in the brief statement of the tenant, but alleges, that after she had been in the occupation of the Penobscot Exchange Coffee House for a time, she was lawfully evicted therefrom; and therefore is entitled to be endowed anew.

In support of her action, the plaintiff relies upon statute chap. 95, sect. 14, which is as follows. "If any woman be lawfully evicted of lands assigned to her as dower, or settled upon her as a jointure, or be deprived of the provisions made for her by will, or otherwise, in lieu of dower, she may be

endowed anew, in like manner as though no such assignment or provision had been made."

This right of a widow to be endowed anew, if she is evicted of lands first assigned to her as dower, is regarded by the plaintiff's counsel, perhaps very properly, as an affirmance of a common law right, rather than as the introduction of a principle, entirely new.

" When dower is assigned, there is a warranty in law implied, that if the tenant in dower is impleaded, she shall vouch the heir, and if evicted, shall recover the third of the remainder." Co. Litt. 38, b ; 1 Cruise's Digest, Title Dower, chap. 4, sect. 26. " In some cases a woman shall have a new assignment of dower. As when she is evicted out of the lands assigned to her, she shall be endowed of a third of the remainder." 4 Rep. 122, a. The widow, at common law, is entitled in the assignment of dower, to one third out of each parcel of land, and if the assignment be made by the sheriff, he is obliged to assign a third part of each manor, or a third part of the arable, the meadow and the pasture. This method of endowment is denominated "according to common right." Co. Litt. 30, b, 32, b, and 39, b.

But when dower is assigned by the heir, he may assign one manor in lieu of a third of three manors, which will be good, if accepted by the widow. And this is called an assignment "against common right." The endowment by metes and bounds, "according to the common right," is more beneficial to the wife than to be endowed "against common right," for then she shall hold the land charged in respect to a charge after her title of dower." 1 Cruise's Digest, Title Dower, chap. 4, sect. 12 ; Co. Litt. 32, b, note 2. " If the husband dieth seized of other lands, in fee simple, and the same descend to his heir, and the heir endoweth the wife in certain of those lands, in full satisfaction of all the dower, that she ought to have, as well in the lands of the feoffees as in his own lands, this assignment is good, and the several feoffees shall take advantage of it. And therefore if the wife bring a writ of dower against any of them they may vouch the heir, and he

may plead the assignment, which he himself hath made in safety of himself, lest they should recover in value against him." Co. Litt. 35, a. This doctrine of the common law of England has been recognized as the law of this country. *Jones & ux.* v. *Brewer*, 1 Pick. 314; *Scott, petitioner*, v. *Hancock & al.* 13 Mass. R. 162.

It is not denied by the plaintiff's counsel, that if the heir should assign as dower an entire parcel of land, in lieu of one third of several parcels, and the dowress should accept the same, so as to bind her, she would take it charged with the incumbrances; but it is insisted that when the assignment is made by authority of the judge of probate, it is otherwise; that the widow is not at liberty to object to an assignment made by order of a court of competent jurisdiction.

The power of the judge of probate does not extend to an assignment of dower in lands of which the husband was not seized at the time of his death; or of lands of which the husband was so seized, when the right to dower is disputed by the heirs or devisees. Stat. chap. 95, sect. 3; *French* v. *Crosby*, 23 Maine R. 276. Judge Jackson, in his treatise upon Real Actions, page 327, in reference to a plea in bar to an action of dower, " that her dower has been already assigned," says, " that it will vary in one case from English forms. By our laws the judge of probate for the county, where the estate of the husband is settled, may cause the widow's dower to be assigned to her by three freeholders appointed by him, and such assignment, being duly accepted and recorded in the probate office, is binding upon all persons interested. This authority of the probate court, it is presumed, would be confined to the real estate of which the husband died seized. The statutes contemplate the settlement of the estate among the widow and heirs or devisees of the deceased." It would seem to follow, that such assignments of dower, being made by the consent of the heirs or devisees of the lands of which the husband died seized, it is only another mode of assigning dower by the heirs or devisees, and the dower so assigned is · subject to all the incidents, which would attach to an assignment made by them. If it were made "according to common

right," and the dowress is evicted, she is entitled to be endow-ed anew; if "against common right," she takes the land charged with all incumbrances, and is concluded.

But it is insisted, that before a widow can be concluded by an assignment of dower "against common right," if there should be an eviction, she must not only accept the dower assigned by the judge of probate, but must give a written and sealed release of all claim to the residue of the estate. No such release seems to be required where the assignment is made by the heir, and no good reason is pointed out, for its necessity, where dower is assigned by the judge of probate. According to lord Coke, in the previous citations, "where dower is assigned by the heir, he may assign one manor, in lieu of a third of three manors, which will be good, *if accept-ed* by the widow." In the case of *Jones & ux.* v. *Brewster,* the assignment of one entire parcel, instead of a third of each of several parcels, was made by release instead of the mode usually adopted; but it was not upon that distinction that the decision rests. The release of the widow was so qualified, that it was to have no other operation, than would the accept-ance of the same land under a different mode of assignment. The Court say, "the important point in every case of that kind is, that the widow has accepted, what could not have been lawfully assigned to her against her will." And when it is said to be a voluntary release of a legal right for something supposed to be equivalent or more, it is not understood that she was regarded as barred merely because she had given a written release as evidence of the assignment, more than if she had accepted the assignment properly made, without the release.

Before an assignment made by commissioners appointed by a probate court can have any validity, it must be accepted by the court, and a decree thereupon passed, and all become matter of record. Upon the question of acceptance, the heirs and the widow are entitled to be heard. She may claim to have the assignment made "according to common right," if it has not been done. She can object to an assignment "against common right;" and there would certainly be great propriety

in this, if the land assigned was incumbered, and she exposed to an eviction. If her objection should not prevail, and the report should be accepted, she would have the right of appeal, or might perhaps refuse to accept the assignment, and resort to her remedy by a direct demand upon and action against the tenant of the freehold. But if she should interpose no objection to the assignment, suffer the commissioners' report to be accepted, a judgment thereon to be recorded, and under that should enter upon the enjoyment of the lands assigned, it is difficult to see wherein she has failed to accept the dower as effectually as she could by her deed. She has become a party to a judgment of a court of competent jurisdiction, which judgment by her acts she carries into full execution.

Was it intended by the section of the statute relied upon, to extend the privileges beyond those which a widow holds under the common law? This provision secures rights to a widow, when she has been obliged to yield her dower to a paramount title, without pointing out the remedy; for this, other provisions of law must be resorted to, in order to make that right available. If she comes within the meaning of the law, "she may be endowed anew, in like manner, as though no such assignment had been made." If, at the time of the eviction the whole estate of which the husband died seized is in the possession of the heirs and devisees, and they interpose no objection to the new endowment, a new petition may be presented to the judge of probate, and the proceedings will be precisely as they were upon the former application. If those who are tenants of the freehold in the land of which the husband died seized, at the time when the new assignment is called for, resist her right as claimed, the probate court has no jurisdiction of the matter, and the widow must resort to her action of dower, after a legal demand upon the tenant and his refusal to make the assignment. And here again it is her right, if any she have, " to be endowed anew, in like manner as though no such assignment had been made." She is entitled to be endowed of all the lands of which her husband was seized during the coverture, unless she is in some manner

French v. Pratt.

barred thereof. The right which she would enforce is not affected by any thing before done, if she is entitled by virtue of that provision. In the trial of an action of dower, the questions are, whether the husband was seized during the coverture, and is he dead; and what is the damage for detention? Stat. chap. 144, sect. 5. If she obtains judgment, a writ of seizin shall issue, requiring the proper officer to cause her dower to be assigned, sect. 8, and the quantity of land to be set off is one third part, and determined by certain fixed rules of law, which do not change, to meet the equities of particular cases.

If a widow is evicted of only a part of the lands first assigned to her as dower, can she retain the remainder, and still be endowed anew, in the same manner as though no such assignment had been made? If she can be endowed anew, upon an eviction of three fourths of her dower and retain the other fourth, she can claim the same right upon the eviction from any part, however small, and retain the residue. It requires no argument to show the injustice and absurdity of such rules. And the counsel for the plaintiff does not claim any right to more than sufficient to supply the loss of that of which she has been deprived. But the probate court cannot authorize commissioners to assign so much only as will make up the deficiency; the new commission cannot be engrafted upon the old; the considerations, which brought the first board to the result which they reported, cannot enter into the deliberations of the new board. The value of the property may have materially changed in the meantime. The part which the widow still holds may have vastly increased in value, and the part from which she has been evicted may have depreciated; or a contrary change may have taken place. If she shall resort to her actions against the tenants of the freehold, she will be met by the same embarrassments and obstacles. We have seen that there is no remedy open to her, excepting to recover her dower; to that she is fully entitled, or she can claim nothing. No issue can be made and tried in an action of dower to determine the relative value of the

lands lost and those which are still possessed by the widow. Such a duty, it is believed, was never undertaken by a court of common law; or was ever directed by such court to be performed by the sheriff, who had committed to him for execution a writ of seizin, upon a judgment in an action of dower.

Again, on the failure of title in that part, which was first assigned to the widow as dower, the quantity of land out of which dower would be taken after such failure, is so far diminished, and her rights are limited in the same ratio.

If practice would authorize such a commission from a probate court, or the trials of such issues; or such assignments upon a writ of seizin under other circumstances, the provision of the statute invoked, forbids its application to such a case as the present; she is to be endowed anew, *in like manner as though no such assignment had been made.*

It is manifest, that where a woman is endowed "against common right," according to the course of proceedings under probate jurisdiction or at common law, there is an insurmountable difficulty, in making restitution to the dowress from the estate for any loss which may arise by reason of an eviction from a part of the lands assigned. If she is endowed of one third of each parcel of land, and the whole of any parcel passes into other hands under a paramount title, she is not prejudiced, for the estate of the husband is so much diminished in quantity, and she should not have dower in lands not owned by the husband. If the paramount title covers only the part assigned to the widow, she is then entitled to be endowed anew of a third part of the two thirds remaining, and there is no interference with other parcels. When the residue of the real estate, of which the husband died seized, after deducting the part assigned to the widow, is sold for the payment of debts or otherwise, the purchasers will understand, that as long as she holds one third they have a perfect title to the two thirds of each parcel, if the title was in the intestate; but if she is endowed of entire parcels instead of a third of each parcel, purchasers of the latter would, upon the plaintiff's view of

French v. Pratt.

the law, be exposed to a deprivation of one third of the land which they had purchased under authority of law.  Before it could be held, that proceedings, which tend to such inconveniences, irregularities, losses and absurdities can be authorized as legal, some positive rules of law should be shown, which require it.  None such have been found.  A widow endowed against common right, if there is no title paramount to that of her husband, holds the dower by a tenure which is not affected if the title to the whole of the residue of the estate should fail, and if she takes dower in this manner, she is also subject to be deprived of the whole or a part, without recourse to other portions of the estate to supply the loss.

When these principles are applied to the case at bar, it is apparent that the plaintiff does not bring herself within the provision of the statute, so that she can recover in the present suit, upon that ground.

But it is again insisted, that the tenant has shown no title in the premises described in the plaintiff's writ, and therefore he is not entitled to contest the right of the plaintiff.  It is quite manifest from the pleadings and brief statements, that this question was not intended to be raised at the trial.  The defence disclosed by the tenant's brief statement was, that the plaintiff had been endowed of all lands of which the husband had died seized.  Instead of leaving the tenant to sustain that defence, and to show that he was entitled to set it up, by a counter brief statement, the plaintiff undertook to avoid its effect by relying upon an eviction of a part assigned to her as dower.  But the widow is shown to have been endowed in all the lands of which her husband was seized at the time of his death; the premises described in the writ were a part of those lands.  She has no right of dower therein; she can recover only upon the strength of her own title; by her writ, pleadings and course of proceedings, she has treated him as tenant of the freehold entitled to defend against her claim; and his possession cannot in such aspect of the case, be presumed to be other than lawful.                    *Plaintiff nonsuit.*