## HALL *v.* WOODMAN.

The question whether there are any debts or legacies, for the payment of which, the lands of an estate in the course of administration, are properly liable, is one clearly within the jurisdiction of the court of probate, and the decision of that court, upon that question, will be final and conclusive i f no appeal be taken.

All claims against a solvent estate, are barred by the statute in three years after the granting of administration, specified cases excepted, unless suit thereon was commenced within the three years, and was not adjusted at the close of said term.

The administrator, cannot by any promise in writing or otherwise, take any claim out from the operation of this statute, nor is he at liberty to omit to plead that statute of limitation, in any case where it is applicable.

The judge of probate should not therefore grant to an executor or administrator, license to sell lands of the estate, if solvent, after the expiration of three years from the granting of administration, except in the cases specified in the statute,unless there are suits against the estate pending and unadjusted at the expiration of the three years, nor in cases of insolvency, unless in cases of appeal from the commissioner, or cases of review, pending and unadjusted at the close of said term, or for other similar reasons.

And when such special reason exists, for extending the time, the administrator should be required to make his application for license, within reasonable time after the cause of delay has been adjusted or ceased to exist, else his application should be refused.

An administrator,whether the estate is s lvent or insolvent,is bound to execute his trust in a reasonable time,and if he unreasonably delay and neglect to apply

land of the estate for the payment of debts, his right to sell the land, his lien upon it for the payment of debts, will be forfeited and lost, and the heirs or devisees may enter and hold the land against him.

WRIT of entry, by Daniel Hall against J. L. Woodman, for a tract of land in Manchester, dated March 30, 1866, served April 7, 1866. Plea, nul disseizin, and a brief statement in the nature of a a plea of betterments. In 1823, Isaac Farmer bought lot six of the seven, ten acre lots, so called, which he sold by quitclaim deed to Josiah I. Hall and Joseph B. Hall, Jr., March twenty-sixth, 1835. April first, 1837, Joseph B. Hall, Jr., conveyed to his father, Joseph B. Hall, one undivided fourth part of the same lot. Joseph B. Hall, Jr., died in February, 1840, over the age of twenty-one years and unmarried, and Joseph B. Hall, his father, was duly appointed administrator and held the trust till his death. After the death of J. B. Hall, Jr., and about June twelfth, 1840, Josiah I. Hall conveyed to Joseph B. Hall all his interest in the easterly half of lot six, which half includes the premises in dispute, and Joseph B. Hall quitclaimed to Josiah I. Hall, all his interest in the west half of the same lot. Joseph B. Hall died September tenth, 1843, and Frederick G. Stark was appointed his administrator October third, 1843. In the inventory of the estate of J. B. Hall, this land was appraised as the "Farmer land," at $600. January second, 1844, the estate of J. B. Hall was decreed insolvent. The administrator settled his first account, January seventh, 1845, and on the same day petitioned the probate court for license to sell the real estate of the deceased to pay debts, &c. License was granted March fourth, 1845, to sell sufficient real estate to raise the sum of $4,000 ; and on the twenty-eighth of March, 1846, the administrator sold sundry parcels of the real estate, to the amount of $2,293.66, but the sale did not include the premises in dispute. On the sixth of October, 1846, he settled his administration account in the probate court, rendering an account of the several parcels of land sold, but rendering no account of any sale of the premises in dispute. Upon that settlement there was a balance of $1,349.43 in the hands of the administrator, at the same time a decree was made accepting the report of the commissioner of insolvency and allowing the claims against the estate to the amount of $2,654.79 ; and a decree of distribution was made of fifty and one-tenth per cent. to the creditors, to wit: The sum of $1,330.95, leaving the balance of said claims unpaid, to wit: The sum of $1,323.84 and leaving in the hands of the administrator the sum of $18.48. No further proceedings were had by said administrator before his death in 1861. No administrator *de bonis non* has since been appointed. During the January term, 1867, William Stark, who is one of the executors of said F. G. Stark, and the holder of a mortgage on said premises, executed since March twenty-eighth, 1846, petitioned the probate court to be appointed administrator, *de bonis non*, of said J. B. Hall. A hearing was had thereon, and the judge of probate ordered said petition

to remain on the files of said court, and that the matter be continued for consideration; since which time, no decree has been made on said petition, nor other proceeding had.

After the death of Joseph B. Hall, said F. G. Stark was also appointed administrator, de bonis non, of the estate of Joseph B. Hall, Jr. In the inventory taken by Stark as such administrator, is entered "one undivided half of the Farmer land," appraised at $375.

On the third day of December, 1845, the administrator procured a license to sell the real estate of J. B. Hall, Jr., to pay debts, &c.; and on the twenty-eighth day of March, 1846, he sold the interest of said J. B. Hall, Jr., in the Farmer land at auction, and it was bid off by James Hall, Jr.; and on the thirteenth day of April, 1846, he executed a deed in the form prescribed by law to said James Hall, Jr., of said land. Stark settled his administration account of J. B. Hall, Jr's, estate, August fourth, 1846, and there was found in his hands, a balance of $791.71. In the settlement of his account of J. B. Hall's estate, October sixth, 1846, he charged himself with $5.89 balance in his hands derived from J. B. Hall, Jr's, estate. James Hall, J., afterwards reconveyed the same land to said F. G. Stark, and from him it passed by various mesne conveyances to the defendant, February twenty-eighth, 1865. Joseph B. Hall left, at his decease, eight children, six of whom by deed of February twenty-seventh, 1863, conveyed to the plaintiff all their right, title and interest in the estate of their late father, said Joseph B. Hall.

The plaintiff claims that under that conveyance, he is entitled to six-eighths of the three-fourths of the Farmer land, formerly held by said Joseph B. Hall, of which the premises in dispute are a part.

It was agreed, that the above case be submitted to the decision of the court, reserving any question to be tried by the jury that either party shall desire, without prejudice from any thing herein contained.

*The questions of law were reserved.*

*S. N. Bell, G. Y. Sawyer and Sawyer Jr.*, for plaintiff.

The plaintiff claims, that he is entitled to three eighths of the tract of land set forth in his writ. The premises were owned by Josiah I. Hall and J. B. Hall, Jr., in common; and J. B. Hall, Jr., sold one undivided fourth to his father, J. B. Hall. At the time of the death of J. B. Hall, Jr., he owned one fourth, J. B. Hall owned one fourth, and Josiah I. Hall owned one half. The interest of J. B. Hall, Jr., at his death passed to his father, who, after the conveyance from Josiah I. Hall, held the easterly part of the lot which included the premises in dispute—one half by the deed from Josiah I. Hall,—one fourth by the deed from J. B. Hall, Jr.,—and one-fourth by descent from J. B. Hall, Jr., his title to the fourth which descended from Joseph B. Hall, Jr., being liable to be sold by the administrator of J. B. Hall, Jr., for the payment of his debts, under license from the probate court. After F. G. Stark's appointment as administrator *de bonis* of the estate of J. B. Hall, Jr., he

obtained license and sold the fourth of the premises which had belonged to J. B. Hall, Jr., to James Hall, from whom the defendant derives all the title he has to any part of the demanded premises. At some time after the execution of that deed, James Hall entered on the premises and conveyed the whole lot by deed to said Stark, from whom it passed to the defendant. This suit is brought within twenty years, after that deed from Stark as administrator to James Hall. The controversy here, relates to the three fourths of the land formerly held by J. B. Hall, who died September tenth, 1843. Upon his death, his real estate descended to his heirs (being his eight children), who were entitled to hold the same, until the administrator should obtain license to sell, and to be divested of their title, by a sale by him, and also to have their rights suspended by a decree of insolvency. *Gregg* v. *Currier*, 36 N. H. 200; *Goodwin* v. *Milton*, 25 N. H. 474; *Plumer* v. *Plumer*, 30 N. H. 566; *Lane* v. *Thompson*, 43 N. H. 326. Such decree was made Jan. 2, 1844. After that decree, the administrator had a special and limited interest in the real estate, until he should either sell the land under a license or the administration should be closed. During the continuance of this estate, no action could be maintained by any of the heirs against the administrator or against any person who could show a title under him. This estate in the administrator is, however, subject to be defeated, and the estate retained by the heirs, if they give bond to the judge of probate conditioned for the payment of the demands against the estate, and to indemnify the administrator therefrom. Rev. Stat. ch. 164, sec. 4; *Plumer* v. *Plumer*, 30 N. H. 558; *Sparhawk* v. *Allen*, 25 N. H. 261; *Lane* v. *Thompson*, 43 N. H. 320. The administrator obtained license to sell, but no sale was made within two years, and then the right to sell expired, and could only be regained by obtaining a new license. So far as the estate of the administrator, or that of the heirs is concerned, the defendant and those under whom he claims are mere strangers and trespassers, they hold neither the special and limited interest of the administrator nor any title under the heirs. The administrator and the heirs, may either of them maintain an action against the defendant, for an injury to or disturbance of their respective rights. *Wood* v. *Griffin*, 46 N. H. 230 and cases cited. At the death of F. G. Stark in 1861, his estate as administrator in the land terminated. It did not pass to his executors nor to his heirs. The estate reverted to the heirs of J. B. Hall, who would hold it and have a right to the possession. *Lane* v. *Thompson*, 43 N. H. 320–325. The title to the estate must be in some one, and there being no administrator to hold an estate, even of a limited character, the heirs or their grantees must have the right to protect their reversionary interest, by taking such steps as will prevent strangers from acquiring a title. The title of the heirs, may under some circumstances be divested by a new appointment of administrator, but the defendant cannot set that up as a defence, as there never has been an administrator under whom he claims, and none who can hold the estate adversely to the plaintiff.

Such title would not be divested, if the heirs gave bond as required by statute. R. S. 164, sec. 4. Thereby the whole purpose for which the administrator would hold the estate would have been accomplished and the right of the heirs and those claiming under them to hold the estate would become absolute. No interest in the three fourths of the land having been sold by F. G. Stark as administrator, and there being no new administrator after his death, the heirs or their grantees had the right of possession, and may maintain a writ of entry against the defendant, who shows no title but possession for a period less than twenty years, and that possession commencing after the death of J. B. Hall.

The appointment of an administrator, if made now, even if the appointment related back to the date of the petition of William Stark in 1867, could not avail the defendant nor constitute a defence, because if the defendant has any right whatever in the premises, it exists by virtue of a title acquired by possession of twenty years under claim of right against the administrator, who held the right of possession, and in any proceedings by the administrator to obtain the possession, the present plaintiff could show that possession of the defendant, to defeat the claim of the administrator, although his own right had been preserved, by bringing his suit before the expiration of the twenty years.

The administration of the estate was practically closed, when after the settlement of the account of the administrator in October, 1846, and the decree of distribution of the funds in his hands, no further steps were taken for the period of fifteen years that elapsed before the death of the administrator, and no new administration was applied for until 1867, after this suit was commenced. Had the administration been wholly closed at the date of the writ, and this land was unsold, it would have reverted to the heirs.

Upon the payment of the debts of the deceased and the remaining expenses of administration, the estate of the administrator in the land ceased. It was also terminated by the heirs giving bond to pay the debts, or by the lapse of twenty years after the decree of distribution, whereby the claims were barred, or by the termination of the administration in any mode. *Bergin* v. *McFarland*, 26 N. H. 533.

The effect of the decree of distribution in the probate court, was that of a judgment. *Tebbetts* v. *Tilton*, 24 N. H. 120. And any claim that the creditors had, would now be barred.

The general policy of the law relating to the speedy settlement of estates, under which the administrator derives his whole sole power to intermeddle with the real estate, indicates that the lapse of time after the decree, would constitute a bar to their claims. There are then no creditors or other parties in interest, who could be entitled to the avails of the real estate.

It then stands in the same position, as if the debts and expenses of administration of J. B. Hall's estate had been fully paid, and the estate, although rendered insolvent, had in fact been solvent. When that fact is made to appear, the estate of the administrator ceases,

and having once ceased, cannot bo revived. *Bergin* v. *McFarland*, 26 N. H. 539.

The plaintiff has rightfully brought his suit, and there being no occasion to divest him of the estate for the purposes of administration, he can maintain the action and recover the land against the defendant.

Any other conclusion, would be in effect, to hold that the defendant coming in without right or by collusion with the administrator, should be permitted by reason of the negligence of the administrator to acquire a title by possession against him, and that the heirs, who could not maintain an action while the administrator held the right of possession, should be deprived of their estate, although it finally appeared, that the real estate was not needed for the purpose of administration.

This result is a necessary conclusion, unless the court should hold that the heirs and those claiming under them have twenty years within which to bring their suit after the special and limited estate of the administrator has terminated by the close of the administration by decree of probate court, or by the lapse of time, which has barred the claims and demands against the estate.

To enable the defendant to maintain his defence they must show that he holds under a valid title from the administrator of J. B. Hall, or that there is an admiristrator holding the trust who has a claim to the possession of the real estate, paramount to that of the heirs ; or that the estate is in such a position, that the appointment of a new administrator will take the estate away from the plaintiff. No such title is shown ; there is no such administrator ; there is nothing for an administration to operate upon, that would require the application of the real estate for the purposes of administration.

If an administrator were appointed under the petition of William Stark, filed in January, 1867, and he should attempt to recover the land, the defendant would be able to show a good title against him by his possession.

The right of the administrator to the possession having expired, and the plaintiff having brought his suit before the defendant had acquired any title as against him, he is entitled to the possession, and and to have judgment for the undivided part of the land conveyed to him by the heirs of J. B. Hall.

*Morrison & Stanley*, for defendant.

The lot of land, which includes the premises now in dispute, was owned by Isaac Farmer and sold by him, by quitclaim deed, to Josiah I. Hall and Joseph B. Hall, Jr. Joseph B. Hall, Jr., conveyed to his father, Joseph B. Hall, one undivided fourth part of the same lot. The interest of Joseph B. Hall, Jr., in said lot, at his decease, passed to his father, being liable to be sold by the administrator of Joseph B. Hall, Jr., lawfully licensed for the payment of his debts. Then Josiah I. Hall conveyed to Joseph B. Hall all his interest in

the westerly half of said lot, and Joseph B. Hall conveyed all his interest in the easterly half of said lot to Josiah I. Hall. Now the plaintiff claims three-eighths of the interest, which Joseph B. Hall had in the easterly half of said lot at the time of his decease, the said plaintiff having had conveyed to him all the right, title and interest of six of the eight children of said Joseph B. Hall, which they had in their father's estate at his decease.

The main question to be determined in this case, is whether or not the heirs of Joseph B. Hall had any right, title or interest, practically or otherwise, which they could convey to the plaintiff, by which he could gain a valid title to the premises as he claims, and is set forth in his writ. Joseph B. Hall died September 10, 1843, and an administrator was appointed of his estate October 3, 1843. January 2, 1844 the estate of Joseph B. Hall was decreed insolvent. January 7, 1845, the administrator settled his first account and was lawfully licensed March 4, 1845, to sell the real estate. October 6, 1846, he settled his second account. Upon that settlement, a decree was made, accepting the commissoner's report of insolvency, which allowed claims against the estate to the amount of $2,654.79, and a decree of distribution was made of fifty and one tenth per cent. to the creditors, to wit.: The sum of $1,330.95, leaving $1,-323.84 as a balance of said claims unpaid, and there the matter rested, up to the time of said administrator's decease, which was in 1861. "Administrators of insolvent estates have a special, unlimited estate to continue until it should be terminated by a valid sale, under a license from the court of probate, or until the close of the settlement of the estate, if a sale should not be necessary." *Bergin* v. *McFarland*, 26 N. H. 537. Under this ruling the administrator's estate continues, until the same is terminated by *valid sale* of all the estate, or until there has been a final settlement of the estate, neither of which transactions has taken place in this case.

"Upon an estate being decreed to be administered as an insolvent one, the presumption of law is that it is insolvent, and that there is not sufficient property belonging to the same to pay the debts. Until it is settled, the heirs have no control over it, and unless it shall eventually prove solvent, no interest in it. In an insolvent estate the heirs never come into possession of any of the property, by viriue of their heirship. The property belongs to the creditors and the administrator is their agent, through whom it is to come." *Goodwin* v. *Milton.* 25 N. H. 473–4.

The plaintiff must show a good and valid title to the premises in dispute, before he can sustain his action. The only source from which he claims this title, is derived from the heirs of Joseph B. Hall. The estate of Joseph B. Hall was decreed insolvent. There was no final settlement by the administrator. From October 6, 1846, there have been $1,323.84, the amount of claims unpaid, held by various creditors against the estate from that date to this. The estate connot become solvent unless these claims are all paid, and so long as it is insolvent, the heirs, as it is clearly shown by the above cited

cases, and the Comp. Stat., chap. 171, sec's 21, 22 and 23, can have no control or interest in the estate, and the plaintiff can gain no valid title to the premises in question from that source, and hence cannot sustain his action. The probate court is a court of record, and said court having accepted the report of the commissioner of insolvency, allowing the claims against the estate to the amount of $2,654.79, the balance of said claims unpaid, to wit: The sum of $1,323.84, stands as a judgment against the estate by said court, and accord ingly is good and valid for the period of twenty years from the date of October 6, 1846, so that the claims of the creditors for the amount of $1,323.84 could not be barred, until the said twenty years had expired; and furthermore the statute of limitations would cease to run at the death of F. G. Stark, the administrator of the estate of Joseph B. Hall, and would not be revived until a new administrator was appointed, and so long as the claims of the creditors were not barred, the plaintiff cannot maintain his action against the defendant.

SARGENT, J. Farmer bought this whole lot in 1823. In 1835 he sold it to Josiah I. Hall and Joseph B. Hall, Jr. In 1837, Joseph B. Hall, Jr., conveyed to his father, Joseph B. Hall, one undivided fourth part of the whole lot, and said Joseph B. Hall, Jr., died in 1840, being over twenty-one years of age and unmarried. This left his father, who was then living, his sole heir, who took his estate and held it for many years, and was also administrator on his son's estate.

This vested in Joseph B. Hall, at least for the time being, one undivided half of the estate; the fourth part which he held by deed from his son, and the other fourth which he held as his son's heir. In June, 1840, after the death of J. B. Hall, Jr., Josiah I. and Joseph B., divided the land between them, each quitclaiming to the other one-half, by which arrangement, Joseph B. took the easterly half of the lot, holding one half of it by virtue of his brother's quitclaim deed and the other half in the manner above stated.

In 1843, Joseph B. Hall died, and his estate was administered in the insolvent course, being decreed insolvent in 1844, and in 1845, license to sell real estate pay debts, was granted to the administrator, and in March, 1846, he sold various lots of land, belonging to J. B. Hall's estate, but though this Farmer lot, was mentioned as belonging to Joseph B. Hall's estate, and appraised at $600, yet the administrator never sold that land or any part thereof under his license, but settled his administration account, first in January, 1845, before his petition for license to sell real estate, and his second and last account in October, 1846, (a commissioner having been previously appointed and his report having been made and accepted), and on such settlement, a decree of distribution was made of the amount in the administrator's hands, among the creditors of the estate, this dividend amounting to over fifty per cent. on the amount of the claims. This was, no doubt, intended and understood to be the final settle-

ment of this estate. This appears evident from several circumstances disclosed in the case. *First*, This license to sell real estate, was void by statute, unless the sale was made under it, in two years from the time it was granted. No attempt was made to sell this land under that license, or to obtain a new one, by the administrator. *Second*. The administrator lived in the neighborhood for fifteen years after this settlement, and never, so far as appears, made any other settlement, or undertook to do anything farther towards administering upon this estate. *Third*. It appears that the same man who administered upon J. B. Hall's estate, was also appointed administrator, *de bonis non*, of the estate of Joseph B. Hall, Jr., after the death of his father, and on the same day that he sold the real estate of J. B. Hall, March, 1846, he also sold, this undivided half of the Farmer land, as belonging to this estate of J. B. Hall, Jr., one-half of the lot having been inventoried as belonging to the estate.

It seems also, that the creditors of J. B. Hall's estate understood that a final settlement had been made in October, 1846, since none of them had ever moved against the administrator, during the fifteen years that he lived among them, after that settlement, as they would have done if they had understood, that any further settlement or payment of their claims was to be made.

But why this administrator should be charged with a balance of $791.71 on settlement of the estate of J. B. Hall, Jr., in August, 1846, and should only charge himself with $5.89 as the balance in his hands accruing from this son's estate, on settlement of the father's estate in October, 1846, we do not understand, neither can we see how this administrator, *de bonis non*, could have obtained license to sell the real estate of J. B. Hall, Jr., since if there was a balance or $791.71 left in his hands on settlement of the estate, that would probably show, that no such sale of real estate was necessary to pay debts with, but more than that, it is impossible to understand, how there could have been any debts outstanding against that estate. J. B. Hall, Jr., died in February, 1840, and his father was appointed his administrator, probably soon after, and the father J. B. Hall died in September, 1843, having probably acted as administrator for three years or more before his death, for the case finds, that he held this trust till he died.

If this were so, then there could be no debts, due after his, (the administrator's) decease, which could authorize the court of probate to grant license to sell real estate, except in one or two contingences. If the administration was suspended, which it probably was not, or if there were debts, not due and depending upon a contingency, to pay which, the judge of probate had ordered the administrator to hold funds of the estate in his hands, under the statute; or when suits had been brought upon the claims within the three years, and were not adjusted. These are all the exceptional cases to the rule that now occur to us, which rule is, that all debts not paid, would be barred by the statute, in three years from the appointment of the administrator.

We have held in *Amoskeag Company* v. *Barnes*, 48 N. H. 25; that all claims not paid or sued, within the three years from the granting of administration, are barred by the provisions of the fifth section of chapter 179 General Statutes, (being the same as the provisions of the Revised Statutes, upon that subject) and that the administrator has no right or power to waive that bar, and that he cannot avoid it, or prevent its effect, by any new promise in writing or otherwise so as to bind the estate.

Therefore, no license of the probate court, should ever be granted to sell real estate, to pay or discharge debts or claims which have thus been suffered to lie more than three years after administration granted, without being paid, except in an exceptional case like those stated above. In Massachusetts it was held, that a license to sell real estate, to pay debts with, which were thus barred, was void, and that a sale under it was void, and passed no title to the purchaser. *Heath* v. *Wells*, 5 Pick. 139 and cases cited; *Thompson* v. *Brown*, 16 Mass. 178.

But in New York, it is held otherwise, and though it is there held that a license to sell should not be granted in such case, yet that when granted the license will be valid, and the sale under it good, if there is no appeal from the decree, granting the license. *Mooers* v. *White*, 6 Johnson ch. 387; and cases; and *Jackson* v. *Robinson*, 4 Wend. 436, and cases cited. We think this is the reasonable view to take of the matter.

The sale was made by virtue of a decree of a court, having jurisdiction over the subject matter. Whether there were any debts or legacies, for the payment of which, the land would be liable, was a question which was directly in issue in the probate court, and a question which that court had competent authority to decide, and it was made its duty to decide it, before granting license. From that decision when made, any party interested might appeal, and have the question retried in this court. But when the court of probate, had decided that question, and no appeal was taken, and the proper decree was entered up, the matter had passed " *in rem judicatrem*," and it would be quite contrary to the elementary principles of law and equity, to disturb the title of a *bona fide* purchaser under such a decree and sale, who had reason to rely upon its validity. Such decisions could not fail to be attended with the most mischievous consequences.

Can the plaintiff hold any part of this land here in controversy? The one-fourth which belonged to J. B. Hall, Jr., at the time of his death, has since been sold in the settlement of his estate, and that part so far as we see, must now be held to have passed by that sale. But the other three-fourths of the east half of the Farmer lot, was owned by J. B. Hall, at the time of his decease, and it is now claimed under him, six-eighths of it by this plaintiff, who represents six of the eight children and heirs of said Joseph B. Hall. The defendant claims it, under the deed given of one half the Farmer lot, when sold at auction as belonging to the estate of J. B. Hall, Jr., but he

can hold only one fourth in that way, and the balance he cannot hold by prescription, as the case shows, and so the question raised, is whether this plaintiff, representing the heirs, can now hold the land as against the creditors of the estate of J. B. Hall, and whether it is now the duty of the judge of probate, to grant administration *de bonis non,* on that estate and thus take this land for the benefit of the creditors of that estate?

We think, that there must be some time within which an administrator must appropriate the lands to pay the debts due from the estate. The heirs at law, have a right to all the land and other property that is not needed, to pay the debts and expenses of the estate. If the estate is solvent, the land goes to the heirs directly, liable to be taken from them if needed, to pay debts, by the administrator. Upon a decree of insolvency, the land passes into the hands of the administrator, with the other property to pay the debts; but if it is not needed for that purpose, when the estate is finally settled, it does not belong to the administrator, but goes to the heirs, although there had been no decree of insolvency. What are the duties of the administrator, and what are the rights of the heirs in such cases? When will the rights of the heirs revive in such real estate, which has been in the hands of the administrator to pay debts with, if it has not been appropriated by him, for that purpose? Where is the line between these adverse claims? In other words, what rule shall the court of probate adopt, in granting licenses to sell real estate, to pay the debts of the deceased owner?

A general rule, which applies in most such cases, is that the administrator must sell the land and appropriate it in a reasonable time after his appointment, else his right to it ceases, and the heirs may step in and resume their rights, or take the rights they would have had, but for the special and limited estate of the administrator. If the administrator, do not thus dispose of the land in a reasonable time, and thus looses his right to dispose of it, it would be negligence on his part, and he would be liable on his bond to the creditors, for whatever they had lost by such neglect on his part, or he may be charged on the final settlement of the estate, for the value of such property, as he had the power to sell, and as it was his duty to sell, but did not. This could only happen, when the estate was insolvent, or, when it was necessary to sell land in order to pay the debts. By law, the administrator's special estate in the land is limited by his necessity to use it to pay debts with, and also limited by the reasonable rule, that he must thus use it in a reasonable time, after his appointment. What that reasonable time is, has never been settled in this state, that we are aware of. But the subject has been discussed considerably in other jurisdictions.

In Massachusetts, the court refused to grant a license to the the administrator to sell real estate of his intestate for the payment of debts, because (among other reasons) more than four years had elapsed since the granting of administration. *Scott* v. *Hancock,* 13 Mass. 162. Jackson, J.,—in the opinion, after alluding to the fact

that it had been settled that an administrator is not bound to plead the general statute of limitations, and that, therefore, without farther legislation, he might by failing or refusing to plead it, suffer a judgment to be recovered against the estate at any time, and thus keep the land bound for an indefinite period—adds : "It is apparently, from considerations of this kind, that the legislature passed the two statutes of 1788, ch. 66, and of 1791, ch. 28. By these statutes, it is enacted that no executor or administrator shall be held to answer to any suit, unless commenced within four years after undertaking that trust. * * * The general effect of that law was to discharge the lien on the estate in the hands of the heir, after the expiration of four years, and this was obviously one of the objects of the legislature in making it."

In *Brown* v. *Anderson*, 13 Mass. 201, and in *Dawes* v. *Shed*, 15 Mass. 8, it was expressly held that the executor or administrator was obliged to make that defence for the protection of heirs, devisees, legatees and purchasers of the estate, which he represents, adding that these statutes were made for the benefit of all interested in the estate, as well as for the convenience and safety of executors and administrators. And it was held that a promise by an administrator to pay a debt due from the estate, will not take the demand out of this statute, that however they might bind *themselves*, they could not bind the *estate* in that way, and thus defeat the limitation the statute had imposed.

In *ex parte*, Allen, 15 Mass. 58, it is held that where the executor pays debts of the testator beyond the amount of the personal property within the four years limited by statute, he cannot after the expiration of the four years, obtain a license to sell the real estate to reimburse himself, unless the estate remains at the time of his application, as it was at the death of the testator, without partition among the heirs or devisees and without any conveyance from them or the executor ; nor unless he makes the application within a reasonable time after his payment of the debts. And that in such case it is entirely within the discretion of the court to grant such license ; that it is not a matter of right, even under the many favorable circumstances there enumerated ; and in that case the petition for license was denied.

In *Thompson* v. *Brown*, 16 Mass. 172, 180, it is said, Parker, C. J., that the lands of a deceased debtor are, indeed, charged by the statute, with his debts, but the lien cannot continue beyond the time fixed by the same statute within which the creditor has a right to pursue his remedy. If he does not thus pursue his remedy, he loses all lien upon upon the real estate. And in *Emerson* v. *Thompson*, 16 Mass. 429, it is said that the bar arising from the statute, of 1788, chap. 66, could not have been waived by the executor, because it is provided not for his benefit alone, but for that of heirs and devisees also, in order to discharge their estates within a reasonable time, from the lien for the debts of the deceased. But the statute of that state, made the four years, com-

mence from the time of accepting the trust and giving notice of his appointment(while ours is three years from the original grant of administration,) and in that case the executor had not given his notice as required. The same doctrine is held in *ex parte*, Richmond, Administrator, 2 Pick. 567.

A similar rule has been established in New York, that the executor or administrator must avail himself of the real estate by sale, in reasonable time, and that unless he do so, his lien upon the real estate is lost. And it is there held, that one year after the executor has entered upon the duties of his office, is a reasonable time, in which to apply for such license, in ordinary cases. The same principle is adopted there as in Massachusetts, but the statute of New York, makes one year the time within which suits must be brought instead of four years as in Massachusetts. In *Mooers* v. *White*, 6 Johns. ch. 387, Kent, Chancellor, reviews the authorities and comes to that conclusion and holds that "the executor ought not in any case to be permitted to obtain an order for the sale of the real estate, as to debts which would be barred at that time by a plea of the statute of limitations" (meaning the special statute applying to executors,) and for the reason that the heir or other owner of the real estate is entitled to the benefit of that plea, and such an order would be the means of depriving them of it. *Jackson* v. *Robinson*, 4 Wend. 436, is to the same effect, though they there hold what seems to us to be a reasonable view of the matter, that the surrogate having jurisdiction of the case, an error on his part can only be taken advantage of, on appeals. But the Rev. Stats. of that state have changed the time and require such application for license to be made within three years after the granting of administration. *Id.* note c,

In Maine the same rule has been adopted as in Massachusetts, their statute of limitations for executors being the same as in that state, four years. In *Newell* v. *Newell*, 8 Greenl. 220, Parris, J., in the opinion says : "The law of Maine, chap. 52, sec. 1, has made all the real estate of which any person may die seised, liable for the payment of his debts, and the charges of administration, but to the duration of that liability, there certainly should be some limitation. It is unnecessary for the accomplishment of the object of the law, and it would be extremely inconvenient and embarrassing to heirs, that this lien so extensive and paramount in its effect, should remain unlimited, * * * as this (four years) is the period beyond which the administrator is no longer liable for the payment of debts, it is to be expected that his administration will speedily thereafter be brought to a close, unless some extraordinary circumstances, render it necessary to keep it open a further time." The same doctrine is held in *Newell* v. *Bragdon*, 14 Maine 320, and *Smith* v. *Dutton*, 16 Maine 312.

In Illinois, it has been held by analogy to the rule established in Massachusetts and Maine that no license should be granted to the administrator by the probate court to sell the real estate of the intes-

tate to satisfy debts still due, after the expiration of one year from the final settlement of the accounts of the intestate, in the probate court, unless the particular circumstances of some special case, would make it the duty of a court of equity, to depart from the general rule. *Dorman* v. *Lane*, 1 Gilman 143.

But in that case, it did not appear that a final settlement had ever been made by the administrator, but it appeared that he had neglected for the space of fifteen years to execute a trust which the law required him to execute in a reasonable time, and " this delay, this neglect of duty, this gross *laches* on his part, remaining wholly unaccounted for, cuts him off from any right to the benefit of this application."

In the case before us, we have seen that the administrator obtained license to sell the real estate. This particular piece of land was inventoried as belonging to the estate and appraised at $600, no inconsiderable sum. The administrator could not have been ignorant concerning it, nor have passed it by, as a thing of no value, but having sold all the rest of the real estate, so far as appears, he settled his second administration account, a decree of distribution is made and the funds in his hands are divided accordingly. The two years within which the land could be sold under the license, expires. No new license is obtained or applied for, and during the fifteen years, that followed this settlement, the administrator lives in the immediate neighborhood, until his death in 1861, when two years more pass and nothing is done by the representative of this administrator, or by the creditors, when these heirs (six of the eight), convey their interest in this land to this plaintiff, who brings his suit just in season to prevent the tenant from holding by adverse possession.

It is said in *Bergin* v. *McFarland*, 26 N. H. 537 ; that the provisions of the Revised Statutes, gave to the administrators of insolvent estates, a special and limited estate, to continue until it should be terminated by a valid sale under a license from the court of probate, or until the close of the settlement of the estate if a sale should not be necessary. But this statement should be qualified as it was no, doubt intended and understood to be, by the provision that the administrator should settle the estate, as it is made his duty to do, in a reasonable time.

In this case, we think the settlement of 1846, should be regarded as the final settlement of the estate. It is evident, that it was so understood and intended, both at the time and afterwards. In that view, the administrator's interest in it ceased, after he settled the estate and left this land unsold ; and it became the property of the heirs with the right of immediate entry, and the creditors have their remedy, not upon the land, but against the administrator for neglect of duty. But suppose we look at it, in the other light. If this settlement of 1846, was not a final settlement, and it was understood that a further and final settlement remained to be made, then the doctrine of *Dorman* v. *Lane, supra*, applies, and the administrator stands chargeable, with having neglected for the space of fifteen

years to execute a trust which the law required him to execute within a reasonable time, and as in that case, so we should hold that this delay, this neglect of duty, this gross *laches* on his part, remaining wholly unexplained cuts him off from any right to apply the real estate of his intestate in that way.   The creditors remedy, would be on his bond, and not by following the land.

But the creditors of Joseph B. Hall have not asked, and do not ask for the appointment of an administrator.   The claim of this plaintiff under the heirs, is not opposed by any creditors of said estate.   This defendant would stand no better, as against an administrator of Joseph B. Hall's estate who should do his duty, and hold the land for the benefit of creditors, than he now does.   Such a movement would not help him any.

The court of probate did right, in not granting the petition for an administrator *de bonis non*.   It should be dismissed at once, and the probate court, should adopt the rule, that after the expiration of three years from the granting of administration, a license to sell real estate should not be granted in ordinary cases.   If administration has been suspended, then the time for granting license may be extended to correspond.   In case of debts not due, or depending on a condition, the judge of probate will make an order for the administrator to hold funds to pay them, but ordinarily, that would not interfere with the settling of the estate, or the sale of the lands, if it did so interfere properly, that would be a good reason for extending the time, according to the circumstances of each case.

But it often happens that claims that are sued within the three years, allowed by statute, are contested in good faith, and it is uncertain whether real estate will need to be sold, to pay debts and expenses, until the suit thus litigated, is determined and the costs and expenses ascertained, which may not be done till long after the three years have expired, then if the claim is established against the estate and judgment recovered for debt and costs, it may become necessary to sell real estate to pay it with, and in such case the administrator should be required to apply for his license to sell, in reasonable time after it is known that a sale is necessary.

And so in an insolvent estate, or one administered in that course, should there be an action of review or an appeal from the decision of the commissioner, as there often is, and a litigation of the claim, the necessity of a sale of a part or all the real estate, may depend upon whether this claim is allowed in whole or in part or disallowed altogether.   In such case, if the administrator acts in good faith and shows a sufficient reason for the delay, and also, applies for license. to sell in reasonable time, after it becomes apparent that such sale is necessary, then the time may be extended.   But unless there is some good reason like that, we see no reason why the same rule should not apply to estates settled in the insolvent course, as well as to others.   In such cases, the debts are ordinarily allowed in six months, and they must be within two years from the issuing of commission and no suits are then brought, but everything goes before the com-

missioner; and unless there should be an appeal from the commissioner, which was not adjusted within the three years, or a case of review, which may be prosecuted notwithstanding the insolvency, there would seem to be no reason for a longer delay.

We do not mean to decide, that every application for license to sell real estate, must necessarily be granted if applied for within the three years. In ordinary cases, it is the duty of the administrator to proceed much more rapidly than that, and have his land sold if needed and his estate all settled up, long before the expiration of the three years.

In this case, there is no occasion for the appointment of any administrator *de bonis non.* There would be nothing for him to do if he were appointed, as the title to this land has long since vested in the heirs.

There must, therefore, be judgment for the plaintiff for six-eighths of three-fourths of the easterly half of the Farmer ten acre lot, unless there is some question of fact, that one party or the other may desire to try.