* GORDON *v.* GORDON.          { MARCH 12,     | 55  399
                                      1875.      | 72  249

*Collateral impeachment of fraudulent judgment.*

A decree of the probate court, granting license to an administrator to sell
real estate, cannot be impeached collaterally for fraud, when the facts
constituting the fraud charged were directly in issue and must have been
determined by the probate court before the license could legally be
granted;—therefore, upon a bill in equity brought to set aside such de-
cree and the sale made in pursuance of it, the court refused to inquire
whether the personal estate was sufficient to pay the debts, or whether
it was necessary to sell the real estate for that purpose, the fraud charged
consisting in the denial of those facts.

IN EQUITY. The bill is brought by Ida M. Gordon and Ruth C. Gor-
don, children and only heirs of Henry L. Gordon deceased,—the latter
being a minor, and appearing by her guardian, Daniel A. Tilton,—
against William Gordon, and the executrix and heirs at law of William
W. George. It alleges that H. L. Gordon died about November 15,
1865, seized of certain described real estate ; that Edwin F. Bailey was
appointed administrator November 23, 1865 ; that the personal estate
which came to his hands amounted to $16,926.63, and that the debts
existing against the estate were less than $100 ; that with full knowl-
edge of the situation of the estate as aforesaid, the administrator afore-
said, in furtherance of a scheme to defraud the estate as hereinafter
mentioned, applied by his petition to the said probate court at the
January term thereof, 1866, for permission to sell the real estate here-
inbefore described, alleging in his said petition that the personal estate
of said deceased was not sufficient to pay the demands against the
same, and that the sale of the real estate of said deceased was neces-
sary for that purpose ; and further alleging that the whole of said real
estate was not more than sufficient for the payment of said demands.
No evidence of the indebtedness of said estate, or of the amount of
personal assets in the hands of said administrator, was ever furnished
or made known to said probate court ; that on the 20th day of March,
1866, and after all the sums aforesaid had come to the possession of
said administrator, leave was granted by said probate court to said
administrator authorizing him to sell the real estate aforesaid in
accordance with the prayer of his said petition. Assuming to act under
the license so obtained, the said Bailey, on the 12th day of April, 1866,
undertook to sell all of the real estate aforesaid, and on the 16th day
of said April, said Bailey conveyed all of said real estate to William
Gordon aforesaid by an administrator's deed in common form, for the
consideration, as expressed in said deed, of $5,000 ; that before the

---

* See *Gordon* v. *Gordon*, 54 N. H. 152.                    REPORTER.

filing of the petition for license to sell the real estate as aforesaid, the said administrator and William Gordon fraudulently and corruptly agreed that the said Gordon, for the purpose of paying and satisfying the sum at which the real estate aforesaid might be sold under a license from said court, should make up and present to a commissioner of insolvency who should be appointed a claim against said estate, which should be allowed by said commissioner without objection on the part of said administrator; that in pursuance of said agreement, said Gordon did make up and present to said commissioner of insolvency a false, fraudulent, and groundless claim against said estate, to the amount of $4,042.16, which said claim was allowed by said commissioner, with a full knowledge on the part of said Bailey of its false, fraudulent, and groundless character; that said sum of $4,042.16 was allowed by the administrator as in part payment of the sum for which said real estate was sold, and the balance of said $5,000, the pretended price for which said real estate was conveyed to Gordon, to wit, the sum of $957.84, was never paid to said administrator; and that said administrator, on the day of the said conveyance to said Gordon, delivered to said William Gordon, without consideration, personal property that belonged to the estate of said Henry L. Gordon and had been appraised as a part thereof, to the amount of $2,859.31.

At some time subsequent to the conveyance to William Gordon as aforesaid, the title of said Gordon, if any, was by him conveyed to James D. Bell and William W. George aforesaid; and said Bell has since conveyed his interest in said real estate to the defendants, or some of them, who now claim, as the plaintiffs believe, to own the entire estate.

The plaintiffs also further represent, that said Ida and Ruth C., at the time of said petition for a license by said administrator, and at the time of granting said license and pretended sale to said Gordon, were both minors; that the said Ruth C. is now but fourteen years of age, and said Ida has but recently arrived at the age of twenty-one years; and they also represent and charge the fact to be, that said license granted as aforesaid was obtained by fraud on the part of said William Gordon and said administrator, and that it is without binding or legal force; and that any pretended sale of said real estate under and by virtue of said license was illegal, fraudulent, and void, and of no binding force upon the plaintiffs, and that proceedings at law have been commenced by the plaintiffs against said defendants to recover possession of said real estate. They also say that the said William W. George, when alive, had full knowledge of all said fraudulent acts and proceedings in the premises as aforesaid.

Wherefore the plaintiffs pray that said pretended sale and fraudulent conveyance of the premises aforesaid may be annulled, and that the same may be decreed to be void, and for such other relief as may be just.

To this bill there was a demurrer, and the questions thereupon arising were transferred to this court by FOSTER, C. J., C. C.

*Barnard* and *Vaughan*, for the plaintiffs.

*Murray*, for the defendants.

LADD, J.  I am of opinion that the demurrer must be sustained. The decree sought to be impeached partakes much of the nature of a. judgment *in rem*.  It is the judgment of a court having absolute and exclusive jurisdiction of the subject-matter.  Gen Stats., ch. 182, sec. 1. Its primary effect was to fix the *status* of the land: persons were only incidentally interested in it, according to their respective rights.   The matter is not before us as the appellate court of probate.   The attempt is to impeach the decree collaterally in an independent proceeding, brought indeed for that express purpose on the equity side of the court.

In my judgment the case will be rightly decided if we ascertain what facts, set up in the bill as the ground for annulling the sale, were involved, in such a way as to make part of the issue settled by the probate court in granting the license to sell, and, setting those allegations one side as *res adjudicata*, see whether enough is still left to entitle the plaintiffs to the relief they ask.   That this will be correct, whether the decree be regarded as a judgment *in rem* or *in personam*, I consider abundantly settled by *King* v. *Chase*, 15 N. H. 9, *Tebbetts* v. *Tilton*, 31 N. H. 273, and numerous other cases in our own reports where the same doctrines have been reäffirmed and applied, as well as by a multitude of cases, both English and American, collected in notes to the *Duchess of Kingston's case*, 2 Em. Ld. Cas. 573, and in Bigelow on Estoppel, part 1, *seriatim*.

In *King* v. *Chase*, after showing the conclusive effect of a judgment when pleaded, or given in evidence if there has been no opportunity to plead it, Chief Justice PARKER says (p. 15),—"But the judgment is thus conclusive only upon the matter which was directly in issue upon the former trial; and the question arises, What is to be understood by the matter in issue? *  * All agree in the rule, but the difficulty lies in its application, in determining what is meant by a judgment directly upon the point."

In *Tebbetts* v. *Tilton*, BELL, J., says (p. 286),—"In most cases the fact of fraud is one wholly extraneous to the record.  It relates to matters not involved in the issue determined in the case, and it may be alleged without denying the truth of the record. *  * Where the fact of fraud is involved in the issue, it has been here expressly decided that such fraud constitutes no ground for impeaching the judgment. *Demerritt* v. *Lyford*, 27 N. H. 541. *  * As the merits of the case are not to be re-tried, fraud, which ought properly to have been tried in the original action, cannot be set up to impeach the judgment, even though it was unknown and undiscovered at the time of the trial."   In *Adams* v. *Adams*, 51 N. H. 397, BELLOWS, C. J., says,—"Nor will the judgment be avoided for fraud when the same question of fraud was tried in the original action."

What was the point in issue and determined by the probate court in

decreeing the license to sell ?   The statute conferring this jurisdiction upon probate courts is as follows : " The judge of probate, on application of the administrator, may grant license for the sale of the real estate of any person deceased    *    *    when the personal property shall be insufficient to pay the just demands by law chargeable to the estate."    Gen. Stats., ch. 182, sec. 1.

The bill sets out that, in his petition for license to sell, this administrator alleged that the personal estate of said deceased was not sufficient to pay the demands against the same, and that the sale of the real estate of said deceased was necessary for that purpose ; and, further, that the whole of said real estate was not more than sufficient for the payment of said demands.    This allegation was indispensable to give the court jurisdiction ; it was, indeed, the sole fact upon which the authority of the court to make the decree depended.    The issue, and the only issue, to be tried was the truth or falsity of that allegation ; and the decree was a direct and unequivocal finding of its truth.    That this is so is not left all to inference, or to evidence *aliunde* as to what issue was in fact tried.    It appears upon the face of the record.    The administrator sets out specifically in his petition the only possible ground on which his right can legally stand, and the decree is in his favor.    Whether the personal estate was sufficient to pay the debts was therefore adjudicated by the probate court in that proceeding, and cannot be inquired into here collaterally for the purpose of overturning that decree.

What is left of the allegations of fraud in the bill?

The allegation is, that the personal assets of the deceased, which came to the hands of the administrator, were nearly $17,000, while the debts were less than $100 ; and the fraud charged consists in the false representations made by the administrator to the judge of probate, in his petition for license to sell, that the personal property was not sufficient to pay the debts, and the procuring of a license when it ought not to have been granted and could not legally be granted for that reason ; but the decree, being necessarily a direct adjudication of the truth of the facts stated in the petition, was necessarily an equally direct adjudication of the falsity of the facts stated in the bill on this same point.    The allegation, that the claim of William Gordon was false and fabricated, is to be answered in the same way.    If that claim had been used in the probate court as evidence of the indebtedness of the estate in order to obtain the decree,—which does not appear to have been the case,—and no other evidence of indebtedness had been offered, it would necessarily follow that the granting of the license was an adjudication that it was a just demand by law chargeable to the estate, according to the requirement of the statute.    It is further to be observed, that we cannot inquire into the validity of that claim without reëxamining the work of the commissioner, and probably disregarding another decree of the probate court whereby the report of the commissioner was allowed.

Upon the whole, it seems to me very plain that all the questions

proposed for examination by this bill are exactly the same as would have come before the court upon appeal, neither more nor less, and are all such as must have been determined by the probate court in granting the license to sell.

It is true, the bill contains the extraordinary allegation that no evidence of the indebtedness of said estate, or of the amount of personal assets in the hands of the administrator, was ever furnished or made known to said probate court. But it cannot be seriously supposed that a matter of that sort can be inquired into in this way; and if it were inquired into and found to be true, what relief can this court, sitting here as a court of equity, afford for such an irregularity in the proceedings of another court, clothed by statute with exclusive jurisdiction of the matter, in respect of which the irregularity is said to have occurred?

It is further said in the bill, that the balance of the sum of $5,000, the pretended price for which said real estate was conveyed to said Gordon, being $957.84, was never paid to the administrator; and further, that the administrator, without consideration, conveyed to said Gordon personal property to the amount of $2,859.31. Is this the place or the way to settle the account of this administrator with the estate?—and even if it were, what has all this to do with the question whether this sale can be set aside? If it had been really supposed that the administrator was to be called to an account here for fraud and misconduct so flagitious,—a breach of trust so gross and glaring,—why was he not made a party to the bill? Clearly, all this is quite immaterial, and aside from the purpose of the bill.

I have said nothing as to the necessity of showing a participation by the defendants in the fraud of the administrator and William Gordon which is not alleged in the bill, because I found the case decided in my own mind before reaching that point. It certainly must be unnecessary to say that. Even if fraud of a character to avoid the sale, as between the original parties, were shown, a subsequent purchaser could not be deprived of the land without showing a participation by him in the fraud. *Hall* v. *Woodman*, 49 N. H. 295;—and see *Patch* v. *Ward*, Law Rep., 3 Ch. App. 203.

The bill does not show whether the administrator has yet settled his final account in the probate court. Considering the nature of the misconduct charged upon him in the bill, it is hardly conceivable that he has done so and escaped detection, provided the charges are true. If he has not, it would seem that these plaintiffs must have an ample remedy at law against him and the sureties on his bond, notwithstanding their land has been conveyed by a title which the court has not the power to annul.

CUSHING, C. J. As the heirs and representatives of a person deceased are only entitled to that portion of their ancestor's estate which remains after payment of all just debts, it follows that the interest of such heirs and representatives imperatively demand that means should be pro-

vided by which the ancestor's real estate, if needed to pay debts, should at the earliest practicable moment be appropriated, as far as necessary, to that purpose. It is also quite necessary that the purchasers of real estate so sold should have reason to place confidence in the title they would so acquire, as there is hardly anything so fatal to the marketable value of property as uncertainty as to the title acquired by the sale.

In order to produce this result, certain proceedings have been authorized by our statute law, which, whether technically proceedings *in rem* or not, if complied with, do absolutely pass to the purchaser under the administrator's sale all the right of the deceased in the property sold.

Of course the interests of persons under age are supposed to be amply protected by their guardians.

For the further protection of the parties in interest, and in order to leave as little occasion as possible for disturbing sales effected in due form of law, it is provided by Gen. Stats., ch. 182, sec. 12, that fraudulent conduct in the sale of real estate by an administrator shall be deemed a breach of the administration bond; so that ample redress may be had without the necessity of interfering with such sales. The bill in this case does not allege any informality in the proceedings, or any want of due notice of the proceedings. It in substance alleges that there was personal property which might have been applied in payment of the debts, and alleges that there was no sufficient proof of indebtedness; but it alleges no fraud which could not and ought not to have been tried at the hearing, so that the opening of this case would have been simply opening the decree for a re-hearing. It is true that the bill does allege a collusion between the administrator and William Gordon to have a false and fraudulent claim presented to the commissioner in insolvency, and allowed by him, but the petition does not allege any circumstances tending to show that the nature of this claim of indebtedness was not known to the parties in interest, or that the wrong might not have been remedied by an appeal from the commissioner's allowance, or show any reason why the decree of the probate court accepting the commissioner's report should be impeached in this collateral way. It should be added, also, that this question of the indebtedness of the estate was one which was open for trial, and should have been tried at the hearing of the petition for license to sell the real estate.

It appears to me, therefore, that this bill does not allege any matters as ground for impeaching the administrator's sale which have not already been duly and properly tried, and that ought not, according to the doctrine of *Adams* v. *Adams*, cited by my brother LADD, to be considered so far settled as to preclude further controversy.

I am therefore of opinion that the demurrer should be allowed.

SMITH, J. I am of the same opinion. A sale made pursuant to a license from the court of probate cannot be impeached collaterally so as to affect innocent purchasers or their grantees. The administrator s not made a party to this suit, and the plaintiffs in their bill do not

charge Bell and George, or their grantees, with any knowledge of or participation in the alleged collusive agreement between William Gordon and the administrator. In order to authorize a decree in the probate court granting license to sell, it was requisite to prove that the sale was necessary to pay debts. That was the question directly in issue in that court; and from the fact that license was granted, the only inference is, that that fact was proved to the satisfaction of the judge of probate. From his decision an appeal could have been taken by these plaintiffs or their guardians to this court, and the question have been tried here; but no appeal having been taken, the matter became *res adjudicata*, and cannot now be reëxamined. *Hall* v. *Woodman*, 49 N. H. 295.

*Grignon's Lessee* v. *Astor*, 2 How. 320, and *Thompson* v. *Tolmie*, 2 Pet. 169, are authorities directly in point, that the granting of a license to sell is an adjudication upon all the facts necessary to give jurisdiction to the probate court; and whether they existed or not is wholly immaterial, if no appeal is taken. A purchaser at a sale under such decree is not bound to look beyond the decree. He is not to see whether the court was mistaken in the fact that there were debts to be paid from the sale. Such decree is reversible only on appeal, and not collaterally in another suit.

It is equally clear that the administrator's account cannot be reëxamined in this way. He is not a party to this bill, nor is this an appeal from the probate court allowing him the items with which it is claimed he has been wrongly credited.

*Demurrer sustained.*